THE STATE OF OHIO, APPELLEE, *v.* MOON, APPELLANT.

[Cite as State v. Moon (1975), 44 Ohio App. 2d 275.]

(No. 4653—Decided April 30, 1975.)

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. James N. Connell,* for appellee.

*Mr. John W. Kessler,* for appellant.

McBRIDE, J. At about 10:45 p. m. on June 25, 1974, defendant, the appellant herein, was apprehended while crouched inside a cabinet in a gasoline station that had closed for the day. A deputy on routine patrol observed a female next to an automobile parked at the station. The deputy investigated and, receiving evasive answers about her and a friend nearby, he checked the building. Discovering a forcible entry, he radioed for assistance. The officers arrested defendant inside, found tires in his car and other tires stacked underneath the window that had been used as the point of entry. After receiving the appropriate Miranda warnings, the defendant said: "I never should have done it." In response, the deputy asked: "Well, why did you?" Defendant answered, "When you get to be my age, you do anything for a piece of ass." At trial, defendant presented no evidence. He was found guilty of breaking and entering and sentenced.

The only assignment of error is the overruling of de-

fense motions for a continuance for trial before a different jury and for a dismissal on the grounds that his appearance in jail clothes during the impaneling of the jury impinged upon the presumption of his innocence, an essential element of his right to due process. It appears that at the commencement of trial, the defendant, wearing the clothing provided by the county, was brought to court by a deputy sheriff. Out of the presence of the jury the trial judge recorded what happened.

"The Court: This is Case 74-CR-942, State versus Grover Lee Moon, Sr. We are ready to go into court to impanel the jury. Let the record show that Mr. Moon was brought into the courtroom by the deputy wearing jail clothes. He was immediately removed from the courtroom. As a matter of fact, Mr. Moon was in the courtroom just inside the door from the hallway, no more than two or three seconds because *the court went out and immediately* told the deputy to bring him out, and when the court spoke to the deputy, the deputy himself had not even gone into the courtroom. There is a long-standing practice at the jail that when a person is brought over for a jury trial he dresses in civilian clothes. Apparently, the ball was dropped here, and the deputy was not so advised." (Emphasis added.)

In a supplementary record accompanied by affidavits, which were not opposed by the defense, the prosecutors stated that during a conference and before proceeding, the defendant was offered the clothing that he was wearing at the time of his arrest, which clothing was in police custody. This offer was declined by the defense for the reason that such clothing would enhance the identification of the defendant.

The next morning, the court recorded further details:

"The Court: The record will reveal that we are in chambers prior to the beginning of the opening statements. The record will reveal that the court has conversed with the deputy who brought Mr. Moon to the courtroom yesterday and that consistent with the Sheriff's Department's practice, the manacles, or handcuffs, were removed from him

prior to his going into the courtroom. But we did go through the impaneling of the jury yesterday and the defendant was seated at counsel table in jail clothes which I think can best be described as some rather non-descript blue jeans, dark blue, navy blue, with an equally non-descript light blue shirt.''

The court stated earlier in conference that the defendant would have made a ''far better appearance dressed in civilian clothes than he did in prison garb.'' However, after the offer was declined, the motions were overruled and defendant remained without a clothing change during the voir dire. Apparently, he obtained other clothing overnight.

The clothing worn by the defendant at voir dire is described as ''non-descript blue jeans, dark blue, navy blue, with an equally non-descript light blue shirt.'' In this context, ''non-descript'' may refer to the laundered appearance of the clothing furnished prisoners by the county —washed out, neither ironed nor pressed—or it could refer to the fact that there was no markng or stencil on the back proclaiming to the world ''here was property of the jail.'' On the other hand, ''non-descript'' may describe the lack of multiple holes or cleverly designed patches that you see on jeans every day on the street, in the market place and in other respectable meeting places. Artificially frayed jeans seemed to have passed out of style and could not have been passed over by the trial judge as ''non-descript.''

The dictionary confirms that ''non-descript'' may be used where a thing is difficult to describe, though one accepted definition means that the object has not been previously described or classified and therefore falls into a miscellaneous category. However, when applied to a single item rather than a group, the inference is that such item is beyond classification and lacks distinguishing features or characteristics. The latter use is currently the preferred definition and, if so intended in the instant case in describing the jeans and shirt, it suggests that the clothing could not be classified—not even as prison garb.

A word should be said for blue jeans. They are the common attire of a large segment of the population. They

are worn on all occasions. Suits of the same material appear on both sexes, albeit they are at times finely tailored with bold stitching of contrasting colors or with shirts or accessories of flaming brilliance. One may assume from comments in the record that the dark blue jeans and light blue shirt in question were not tailored and provided a disappointing GI appearance of a Navy recruit who washed his government issue. This explains the rhetoric of the trial judge when he used the description of "non-descript" to the jeans provided by the county. They added nothing to his appearance.

The reference to "prison uniform" and "prison garb" was introduced by the defense in voir dire and in each instance the juror said clothing would not affect his judgment. Counsel for the defense did not explore the subject further and accepted the jurors.

Identification was not a disputed issue. As argued by the defense:

"As I told you at the outset, the defendant was in the building. This is not questioned, not denied. It's a fact. And it's admitted. The defendant was in the building. But, the defendant is entitled to his day in court."

Counsel for the defense again, in argument, reminded the jury that during voir dire the defendant was in "prison garb" and that this should not influence the verdict. He argued too that defendant "wasn't given the opportunity to elect whether he would wear these (his clothing when arrested) or some others," an item not in the trial record and contradicted by the supplemental record. This can only be characterized as an appeal to sympathy and improper under any circumstances. These references by the defense, before the jury, to prison garb can only be described as the creation of mistakes by the defense for which there can be no successful appeal.

Several factors stand out in the trial record: The immediate response and consideration of the trial judge who was familiar with the garb, and his effort to improve the appearance of the defendant before the jury; the offer of the prosecutor to return the only available clothing of the

defendant and the refusal by the defendant to accept it; there was no request or effort made before trial to obtain any other clothing by the defense; the motion for a continuance was for a new jury panel or dismissal and not for a delay to obtain other clothing, and there is no provision of law and as yet no constitutional interpretation that the state must provide special effects, at public expense, such as tailored clothing, to enhance the impression of a defendant before a jury.

Defendant relies upon *Gaito* v. *Brierley* (C. A. 3, 1973), 485 F. 2d 86, where the court held, at page 88, that "compelling a defendant to appear before a jury in his prison clothes unconstitutionally infringes his due process right to be presumed innocent until proven guilty." The key word is "compelling," because on the second day of trial, defendant's sister brought his civilian clothes to the prison, but a guard refused to permit him to return to his cell to put them on. The record does not indicate that this was brought to the attention of the trial judge. The court notes that although there is some authority to the contrary, it accepted the majority view that *compelling* a defendant to appear before a jury in his prison clothes unconstitutionally infringes upon his due process rights. Defendant's cases on prison garb are cited and dismissed in the *Gaito* case.

There is no reason to question the point that the use of compulsion by custodial authorities to attire a defendant at trial in clothing other than that of his choice is arbitrary and unwarranted. Similar conduct by the court would be an abuse of discretion.

In *Gaito, supra,* the court states at page 88, note 3:

"We agree with the Fifth Circuit's observation in *Hernandez* v. *Beto,* 443 F. 2d 634, 637 (5th Cir. 1971), that a defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error. This would constitute a voluntary waiver of his right which would negate the necessary element of compulsion. For example, a prisoner may want to appear in prison garb as part of a trial strategy designed to evoke jury sympathy."

Among the cases cited in *Gaito,* defendant mistakenly

lists *Watt* v. *Page* (C. A. 10, 1972), 452 F. 2d 1174, as among the minority. Watt, the defendant, appeared in coveralls on which was stenciled "Oklahoma County Jail 44." No objection was made during the trial and there was no record of the circumstances. In the face of the silent record, the court remanded the case for an evidentiary hearing. The reviewing court was unable to determine whether the appearance in the jail outfit with the stencil on it was voluntary or not. The court said, at 1176:

"A deliberate purpose to be so tried may be found from the failure to object to trial in jail clothing unless the trial court is persuaded that the lack of objection resulted from circumstances that unfairly caused the defendant to forego an objection or to request to be tried in other clothing. These must be circumstances which were not a part of trial strategy."

The question on the instant appeal does not appear to have been answered in Ohio in a reported case. As noted in *Gaito* v. *Brierley, supra,* the majority view among a relatively few cases is that compulsion to appear in prison garb where other clothing is available to the defendant is wrong for any one of several reasons, but absent compulsion the majority falls apart and is dependent upon individual circumstances.

There is no question that the orderly conduct of a fair and impartial trial is the responsibility of the judge. It is his duty to control all activities to prevent bias or prejudice. *State* v. *Farmer* (1951), 90 Ohio App. 49. Where necessary, it is proper to have the defendant shackled with armed officers in the coutroom and a cordon of soldiers about the courthouse during the trial. *Pierpont* v. *State* (1934), 49 Ohio App 77; *Makley* v. *State* (1934), 49 Ohio App. 359. The exclusion of the defendant from his own trial may be resorted to if necessary. Trial judges have the *discretion* to meet the circumstances of each case. *Illinois* v. *Allen* (1970), 397 U. S. 337, 90 S. Ct. 1057.

These cases demonstrate the heavy responsibility of the trial judge to use, but not abuse, his inherent power to insure an orderly and fair trial. However, the instant case

does not factually fall in any of the more serious categories. Necessary security required no more than the presence of a custodian at trial, a factor which disclosed to the jury that the defendant was confined pending trial. No objection was made to the presence of an armed deputy.

It is clear in the instant case that the discretion of the court was exercised, and exercised instantly by the trial judge on the defendant's behalf. While the deputy brought the accused to trial in other than his own apparel, the defense rejected the offer of the only other clothing that was available. The fact that the defendant and his counsel were present demonstrates that both knew they should show up prepared to go forward. Taking this and the condition of the trial docket into consideration, a request for a continuance tied to a request for a new jury panel that would similarly witness the deputy present throughout the trial, the denial of the motions was not an abuse of discretion. Thereafter the record reveals no more than that the defendant took tactical advantage of the situation by expanding it to the benefit of the defense before the jury and for a possible issue on appeal. Whether these jurors previously knew that blue jeans were issued to those in the county jail was not explored. Of course one in custody should not be branded. This includes stenciled clothing which is a continuing reminder of a condition of imprisonment.

Closer to the instant situation, it is apparent from judicial opinions that the public often provides, indeed compels, those in custody to wear usually brown, gray or blue jeans, or their equivalent, while in custody. These are traditional fatigue or work clothes which if not labeled on the outside are not recognized as prison garb except by those familiar with a specific institution. This is what we find here: non-descript blue jeans and a lighter blue shirt with no disclosure of their origin except as revealed by the defense.

Practically every accused has clothing when arrested and, if this is exchanged for a common outfit for security and health reasons, the accused should have a choice of wearing his own clothing, the prison outfit or such other as

he may obtain. Unlike the *Miranda* rule, there is no recognized constitutional duty to read to a defendant his dress rights for trial. This must be left to his own and to his counsel's choice as a part of trial preparation. There is no constitutional or statutory duty to require at state expense a smart, tailored outfit (that would exceed the cost of providing free counsel) to enhance his appearance before the jury. Indeed, if there was such a requirement and it was mandatory, it may violate the rights of the accused.

Where the defendant is the custodial responsibility of the sheriff or other officer, clothing in itself is usually, but not always, immaterial. The presence of an officer is notice of the accused's custodial condition. In cases of dangerous defendants, or escape risks the type of clothing may become significant as a deterrent, or as an identification if an escape is made. This, like shackles or other necessary restraints, rests in the discretion of the trial judge, whose authority cannot be obscured by a vague reference to due process in judicial procedure.

It strains the faith and trust of the people in our constitutional structure to resolve simple questions by lofty rhetoric and princely theories of fundamental law that were never considered or intended by the founding fathers. How a defendant in custody should be attired at trial was not remotely in the mind or pen of the draftsmen of the constitution or the bill of rights. In view of the habits of dress on our early frontiers, it is doubtful if they included accouterments within their conception of due process. We conclude that the issue of the attire of the accused does not rise to constitutional dimensions, certainly not in this case, but is one within the discretion of the court.

Without belaboring the question whether the standards of common attire has improved over the years, it should be apparent that within reason the accused be permitted to wear what he or she chooses. Compulsion upon this choice must be weighed by the actual exercise of discretion of the trial judge and measured against the necessities of the case. Where discretionary action is needed, it is incumbent upon counsel or a party to bring the problem to the

attention of the court. A failure to do so amounts to a waiver of that question. It may be added, that an abuse of discretion by the court is reversible error.

The presence of the accused in the custody of a deputy during voir dire in "non-descript" blue jeans and shirt, not stenciled or otherwise identified as county jail clothing, is a matter within the discretion of the trial court and is not an abuse of discretion, nor prejudicial, where the accused refused to wear his own apparel, did not provide other clothing and reference to the blue jeans as prison garb was made by the defense in qualifying the jury panel and in final argument.

To cover all points raised by the single assignment of error, it is clear beyond a reasonable doubt that defendant's presence before the jury during voir dire in non-descript blue jeans and shirt did not constitute prejudice. The subject was apprehended inside the building he burglarized, and was in possession of tires he had removed and placed in his car. Both his car and his girl friend were outside the station at night after the station was closed. On the way to the station, he made admissions and at trial his counsel admitted the fact of a trespass. The defense offered no testimony to contradict the state's evidence.

On the whole record, the guilt of the defendant was so manifest beyond a reasonable doubt that his presence during voir dire in non-descript blue jeans was not prejudicial. The judgment and sentence of the trial court is affirmed.

*Judgment affirmed.*

KERNS, P. J., and SHERER, J., concur.