**The STATE of Ohio, Appellee,**

**v.**

**PIERCE, Appellant.**

[Cite as *State v. Pierce* (1998), 127 Ohio App.3d 578.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 97–L–033.

Decided May 18, 1998.

580

*Charles E. Coulson*, Lake County Prosecuting Attorney, and *Wendy J. Smither*, Assistant Prosecuting Attorney, for appellee.

*Michael A. Partlow*, for appellant.

WILLIAM M. O'NEILL, Judge.

Appellant, Sherman W. Pierce, appeals from a final judgment of the Lake County Court of Common Pleas which granted summary judgment in favor of appellee, the state of Ohio, on appellant's petition for postconviction relief. For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

On July 28, 1989, appellant was indicted by the Lake County Grand Jury on the following: one count of rape in violation of R.C. 2907.02, one count of kidnapping in violation of R.C. 2905.01, and one count of felonious sexual penetration in violation of R.C. 2907.12. Appellant was arraigned in the Lake County Court of Common Pleas on August 1, 1989, and entered a plea of "not guilty" to all charges. A jury trial commenced on November 6, 1989.

The following evidence was presented at appellant's trial. On July 23, 1989, the victim in this case, an eleven-year-old girl, was taken to a local swimming pool in Painesville, Ohio, by appellant and Olivia Hughes. On the day of the alleged incident, Hughes was living with the victim and her family as well as dating appellant. At approximately 5:00 p.m., the victim was picked up and returned home from the swimming pool by Hughes and appellant. Thereafter, the victim took a nap and was later awakened by the sound of a vehicle's horn outside her home. When she went outside, the victim observed appellant in his car. It is undisputed that appellant took the victim to Burger King.

The victim testified that after going through the "drive-thru" at Burger King, appellant proceeded to the Villa Rosa Motel in Painesville Township, Lake County. Appellant appeared drunk and asked the victim if she had "ever done it with a boy." The victim responded, "No." Upon arriving at the motel, the victim entered room No. 6 with appellant. The victim stated that once she was inside the room her clothing was removed, a tube of lotion was inserted in her vagina, and appellant performed sexual intercourse with her against her will.

Upon her return home, somewhere around 8:00 p.m., the victim told Hughes what had occurred. Hughes immediately took the victim to the hospital, where they arrived at 8:16 p.m. At the hospital, the victim was examined by Dr. Barbara A. Jordan. Samples were taken with a rape evidence kit and sent to the Lake County Regional Forensic Laboratory, which concluded that there was no evidence of semen, blood, hair, or saliva or any trace evidence of value. During the course of the physical examination of the victim, Dr. Jordan noted redness about the victim's vagina, and the opening about her hymen had expanded to about twice the size of a normal preadolescent female. The doctor further noted a "milky type of whitish discharge" in the victim's vagina. In the doctor's medical opinion, the victim exhibited signs of sexual abuse.

After her release from the hospital, the victim was interviewed at the Lake County Sheriff's Department. At trial, the deputies testified that the information obtained by the victim was consistent with what they had found during the course of the investigation. Specifically, appellant was found in room No. 6 of the Villa Rosa Motel at approximately 9:00 p.m. the day of the alleged incident. The layout of the room coincided with the victim's statement, and items were found which the victim had described, including a tube of Oil of Olay lotion. A later examination of the outside of the tube of lotion by the Lake County Regional Forensic Laboratory revealed no cellular material.

Appellant, taking the stand in his own defense, denied any involvement in the crimes charged. Although appellant admitted taking the victim to Burger King the night of July 23, 1989, appellant testified that he dropped her off at the restaurant and continued his journey, stopping at various drinking establishments and visiting with family members. Therefore, a key question in dispute at trial was the whereabouts of appellant between 6:00 and 9:00 the evening of July 23, 1989. Appellant produced witnesses at trial who testified to seeing appellant purchasing gasoline at approximately 6:10 p.m. and could account for his whereabouts between approximately 6:30 p.m. to 7:30 p.m. and 8:30 p.m. to 8:40 p.m.

On November 8, 1989, following the presentation of the above evidence, a jury found appellant guilty on all three counts. He was later sentenced to serve consecutive life sentences on the charges of rape and felonious sexual penetration and ten to twenty-five years on the charge of kidnapping.

On December 15, 1989, appellant filed a timely notice of appeal with this court. Appellant was represented on appeal by his trial attorney. In *State v. Pierce* (Dec. 28, 1990), Lake App. No. 89–L–14–170, unreported, 1990 WL 222991, this court affirmed appellant's conviction. On June 7, 1991, the Supreme Court of Ohio denied appellant's motion for leave to appeal from our decision. Thereafter, appellant filed an application with this court to reopen his appeal based upon ineffective assistance of appellate counsel. This court denied appellant's application on August 18, 1995, on the grounds that the application was not timely filed and no good reason existed for the delay. This judgment was affirmed by the Supreme Court of Ohio on February 23, 1996.

On September 20, 1996, appellant filed a petition for postconviction relief and requested an evidentiary hearing. In his petition, appellant alleged that he was denied the effective assistance of trial counsel because his attorney failed and refused to call certain witnesses on his behalf including, but not limited to, Michael Smith and Mimi Pace.[1] Appellant further alleged that his trial counsel

---

1. There is no indication from the record as to what testimony, if any, Mimi Pace could have provided appellant at trial. Additionally, appellant has made no attempt to demonstrate how

failed, despite his repeated request that he do so, to do the following: properly subpoena a senior criminologist from the Lake County Regional Forensic Laboratory to testify concerning the "milky type of whitish discharge" observed by Dr. Jordan, make arrangements for him to wear normal street clothes during the trial instead of jail garb, and employ expert witnesses to testify on his behalf. In addition, appellant alleged that he was heavily sedated during his trial, incompetent, and otherwise unable to assist his trial counsel.

In his petition, appellant attached an affidavit from one Michael Smith, who averred that appellant was at the Liberty Bar on July 23, 1989 between the hours of 7:45 p.m. and 8:00 p.m., thereby raising the issue whether the alleged incident could have occurred within the time frame presented by appellee.[2]  Smith further averred that he was ready, willing, and able to testify to these matters at trial and informed appellant's trial counsel of this fact.  However, appellant's trial counsel failed to contact Smith.  As stated earlier, from a factual standpoint, the whereabouts of appellant between 6:00 p.m. and 9:00 p.m. was a critical element to be weighed by the jury.

On September 24, 1996, appellant filed a supplemental affidavit, in which he stated his personal knowledge of the above instances of his trial counsel's ineffectiveness.  However, aside from the affidavit of Smith, appellant presented no other evidence to support his allegations that he was denied the effective assistance of trial counsel.

On November 29, 1996, appellee filed a response in opposition to appellant's petition for postconviction relief and requested that the trial court grant summary judgment in its favor.  Appellee argued that appellant failed to meet his burden to submit evidentiary documents containing sufficient operative facts demonstrating the lack of competent counsel and that he was prejudiced by counsel's ineffectiveness.  Additionally, appellee attached an affidavit from appellant's trial counsel which averred that he made numerous attempts to call Mimi Pace as a potential witness but was unable to do so because she repeatedly made herself unavailable.  Appellant's trial counsel stated that he made a tactical decision not to employ additional medical and expert testimony because the only physical evidence in the case was exculpatory.  He further stated that appellant had an understanding of both the surroundings and nature of the proceedings against him and assisted in his own legal defense.  Appellant's trial counsel, due to the lapse of time, did not recall the circumstances surrounding appellant's

---

he was denied the effective assistance of counsel by his trial counsel's failure to call Mimi Pace as a witness.

2.  Thus, the time frames of 7:30 to 7:45 p.m. and 8:00 to 8:30 p.m. were unaccounted for by appellant.

attire at trial. While appellant's trial counsel made no mention why he failed to call Smith to testify at trial, appellee argued that Smith's testimony was of no consequence, as "counsel was able to secure the testimony of three alibi witnesses with regard to the pertinent and relevant time frame of the petitioner's whereabouts on July 23, 1989." On January 6, 1997, appellant filed a memorandum in opposition to the state's request for summary judgment and again requested that the trial court conduct an evidentiary hearing on this matter.

On January 29, 1997, the trial court, without conducting a hearing, denied appellant's request for postconviction relief and granted appellee's motion for summary judgment. From this judgment, appellant filed a timely notice of appeal and now asserts, in his sole assignment of error, that the trial court erred in denying his petition for postconviction relief without a hearing.

Before reaching the merits of appellant's assignment of error, we initially note that appellant's petition for postconviction relief was timely filed in the trial court. R.C. 2953.21(A)(2), effective September 21, 1995, provides:

"A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of time for filing the appeal."

At first blush, it would appear that appellant's petition was not filed within the one-hundred-eighty-day time limit set forth in R.C. 2953.21. However, Section 3 of Senate Bill No. 4, amending R.C. 2953.21, contains the following saving language:

"A person who seeks postconviction relief pursuant to sections 2953.21 through 2953.23 of the Revised Code with respect to a case in which sentence was imposed prior to the effective date of this act or to an adjudication as a delinquent child and order of disposition issued prior to the effective date of this act shall file a petition within the time required in division (A)(2) of section 2953.21 of the Revised Code, as amended by this act, or within one year from the effective date of this act, whichever is later." 146 Ohio Laws, Part IV, 7826.

Since appellant was convicted prior to September 21, 1995, his petition for postconviction relief, filed September 20, 1996, was timely. *State v. Broome* (Sept. 12, 1997), Geauga App. No. 96–G–2021, unreported, 1997 WL 585908; *State v. Ankrom* (June 30, 1997), Franklin App. No. 96APA11–1616, unreported, 1997 WL 360855; *State v. Drake* (Apr. 23, 1997), Lorain App. No. 96CA006551,

unreported, 1997 WL 209144; *State v. Brown* (Mar. 10, 1997), Tuscarawas App. No. 96AP100083, unreported, 1997 WL 117038.

Next, we note that appellant's claim is not barred by the doctrine of *res judicata.* A petition for postconviction relief may be dismissed based on this doctrine where a petitioner could have raised issues in his petition at trial or on direct appeal. *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104; *State v. Lewis* (Dec. 19, 1997), Trumbull App. No. 96–T–5522, unreported, at 4–5, 1997 WL 799537. The Supreme Court of Ohio has held that a petition for postconviction relief alleging ineffective assistance of trial counsel may be dismissed without a hearing based on *res judicata* where the petitioner had new counsel on direct appeal and the claim of ineffective assistance of counsel could have been raised on direct appeal without resorting to evidence outside the record. See *State v. Lentz* (1994), 70 Ohio St.3d 527, 530, 639 N.E.2d 784, 785–786, citing *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169, at syllabus. The court also recognized, however, that a claim of ineffective assistance of counsel cannot be barred by the doctrine of *res judicata* where the claim is raised, for the first time, in a postconviction relief petition and the petitioner was represented by the same counsel both at trial and on appeal. *Lentz* at 529–530, 639 N.E.2d 784. The rationale for this proposition is that counsel cannot be expected to assert his own ineffectiveness. *Id.*

As previously noted, appellant was represented by the same counsel at trial and on appeal. Thus, based on the holdings of *Cole* and *Lentz,* the doctrine of *res judicata* will not bar appellant from raising his trial counsel's ineffectiveness in a postconviction relief petition. Additionally, appellant has attempted to present evidence outside the original trial court record. Since his arguments could not have been raised on direct appeal, appellant has properly raised these issues in his petition for postconviction relief. *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 4 OBR 580, 448 N.E.2d 452; *State v. Brant* (Apr. 17, 1998), Portage App. No. 97–P–0019, unreported, at 8, 1998 WL 386183.

Having discussed these two procedural matters, we will begin addressing appellant's assignment of error that the trial court erred in denying his petition for postconviction relief without first conducting an evidentiary hearing.

R.C. 2953.21 provides in part:

"(C) * * *Before granting a hearing on a petition [for postconviction relief], the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to,

the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.

"(D) Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are made up, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.

"(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending."

■■ From the statutory language, it is apparent that a hearing is not required in every postconviction relief proceeding, but, rather, is discretionary with the trial court. *State v. Strutton* (1988), 62 Ohio App.3d 248, 251, 575 N.E.2d 466, 467–468. The court must determine whether there are substantive grounds for relief that would warrant a hearing based upon the record and any supporting affidavits and documentary evidence before the court. *State v. Guerriero* (Sept. 26, 1997), Ashtabula App. No. 96–A–0078, unreported, at 4, 1997 WL 663512, citing *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 18 O.O.3d 348, 350, 413 N.E.2d 819, 822. To establish substantive grounds for relief on a claim of ineffective assistance of trial counsel, the petitioner bears the initial burden of submitting evidentiary materials containing sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Brant* at 8.

■ For purposes of determining whether there are substantive grounds for postconviction relief that would warrant a hearing, it is generally accepted that affidavits presented in support of the petition should be accepted as true. *Guerriero* at 5. However, conclusory or self-serving affidavits presented by the petitioner in support of his claims, without more, will not satisfy the petitioner's evidentiary burden. *State v. Akers* (Feb. 2, 1998), Lawrence App. No. 97CA22, unreported, 1998 WL 46512. As the Supreme Court of Ohio stated in *State v. Jackson* (1980), 64 Ohio St.2d 107, 111, 18 O.O.3d 348, 351, 413 N.E.2d 819, 822:

"Broad assertions without a further demonstration of prejudice do not warrant a hearing for all postconviction petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing."

In the case *sub judice*, appellee argues that appellant failed to set forth sufficient facts to demonstrate the lack of competent counsel and that he was

prejudiced by counsel's ineffectiveness. If this court looked solely to appellant's affidavit, we would be inclined to agree with appellee's position. Indeed, appellant's affidavit appears to apply the shotgun approach to postconviction relief petitions: throw everything into the petition and hope that something sticks. In appellant's first set of arguments, he argues that his trial counsel failed to conduct the trial as he requested his attorney to act. In the next set of arguments, appellant claims that he was incompetent and so strung out on drugs that he was unable to assist his trial counsel in his defense. Under these circumstances, evidencing inconsistent positions within the postconviction relief petition itself, we cannot fault the trial court for treating appellant's petition, and his affidavit attached thereto, with suspicion.

█ Notwithstanding the infirmities with appellant's affidavit, however, we hold that in this summary judgment exercise, appellant submitted evidentiary materials sufficient to raise a conflict as to a material issue of fact and, thus, sufficient to warrant a hearing on his claim that his counsel was ineffective. As previously noted, in addition to his own affidavit, appellant attached to his petition for postconviction relief an affidavit from Michael Smith, who alleged that he could account for appellant's whereabouts between 7:45 and 8:00 the evening of July 23, 1989. Despite the testimony that he alleged he could provide for the defense, Smith averred that appellant's trial counsel made no attempt to contact him regarding his observations the night of the alleged incident. Interestingly, appellant's trial counsel did not deny Smith's claims in the affidavit he submitted on behalf of appellee.

Appellee attempts to minimize the importance of any evidence Smith may have provided the defense because appellant was able to secure three witnesses who testified at trial and provided him with an alibi during the relevant time period of the alleged incident: 6:00 p.m. to 9:00 p.m. Although appellee is correct in stating that appellant presented three alibi witnesses as to his whereabouts during this time period, none of these witnesses testified as to where appellant was at the critical time period just prior to the victim's return home from the alleged incident around 8:00 p.m. In any event, an issue of a material fact remains sufficient to warrant a hearing as to this issue. The evidence presented by appellee in support of its motion for summary judgment does not change our position on this matter.

█ As previously noted, R.C. 2953.21(D) provides that summary judgment should be granted on a petition for postconviction relief only when the right thereto appears on the face of the record. As this court stated in *State v. Russell*

(Dec. 15, 1989), Trumbull App. Nos. 4032 and 4084, unreported, at 9, 1989 WL 152692:

■ " 'The moving party in a summary judgment exercise has the burden to establish the absence of all genuine issues of material fact. *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256 [8 OBR 347], 456 N.E.2d 1262. In addition, it has been established that even if a nonmoving party has not rebutted the moving party's supporting material with supporting material of its own, this does not automatically mean that summary judgment should be granted in favor of the moving party.

" 'If the supporting material of the moving party's motion for summary judgment does *not* establish the absence of all genuine issues of material fact, then summary judgment must be denied regardless of the content of the nonmoving party's opposition to the motion for summary judgment. This is true even if the nonmoving party has completely failed to respond, because Civ.R. 56(E) states that if a nonmoving party fails to respond, summary judgment shall be entered against that party *if appropriate. Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198 [24 OBR 426, 494 N.E.2d 1101']. *Lewkowski v. Goodwin* (Sept. 30, 1988), Lake App. No. 13–097, unreported, 1988 WL 102615. (Emphasis in original.)"

As a genuine issue of material fact remains as to what credible evidence, if any, Smith could have presented in appellant's defense, the trial court erred in granting appellee's motion for summary judgment on this issue.

In addition to conducting an evidentiary hearing regarding trial counsel's alleged failure to call Smith as a witness, we direct the trial court to conduct further inquiry as to whether appellant wore prison garb at his trial. Although appellant's evidence on this subject is untested, the affidavit appellee submitted from appellant's trial counsel proves troubling as it is a far cry from a denial of appellant's claim on this issue. Further inquiry needs to be made as to what attire appellant wore at his trial. *If* credible evidence exists that appellant wore prison garb to his trial, the trial court must focus its inquiry as to the reasons why appellant was dressed this way and the prejudice, *if* any, resulting therefrom. See, *e.g., Estelle v. Williams* (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126; *State v. Moon* (1975), 44 Ohio App.2d 275, 73 O.O.2d 298, 337 N.E.2d 794.

■ As to appellant's remaining, unsupported claims that he did not receive the effective assistance of counsel, we reject these remaining alleged errors as

presented in appellant's petition for postconviction relief. Appellant has offered no evidence that the presentation of any further witnesses, with the possible exception of Smith, would have changed the outcome of his trial. Additionally, given the lack of physical evidence linking appellant to the crimes and the exculpatory nature of the report made by the Lake County Regional Forensic Laboratory, appellant has failed to demonstrate the need for further expert testimony in this area. Moreover, the record itself provides no support for appellant's claims that he was incompetent or otherwise unable to assist with his defense, particularly when appellant presented evidence in his own defense at trial.

Accordingly, we reverse the judgment of the trial court. On remand, the trial court must conduct an evidentiary hearing where the parties may present evidence regarding the issue of appellant's attire at trial and the circumstances surrounding Smith's testimony. We note that we cannot determine, without further evidence presented at a hearing on these issues, whether overwhelming evidence exists to establish appellant's guilt and whether one or both examples of trial counsel's ineffectiveness, if error, constitute harmless error beyond a reasonable doubt. These determinations, as well as the issues regarding appellant's attire at trial and Smith's testimony, must first be made by the trial court following an evidentiary hearing on these matters.

Based on the foregoing, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and CHRISTLEY, J., concur.