DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment entered by the Washington County Common Pleas Court denying a petition for postconviction relief filed by Richard Mollohan, petitioner below and appellant herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM WAS BARRED ON THE BASIS OF RES JUDICATA. (FINDING OF FACTS AND CONCLUSIONS OF LAW; JUDGMENT ENTRY DENYING POST CONVICTION PETITION)."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM. (FINDING OF FACTS AND CONCLUSIONS OF LAW; JUDGMENT ENTRY DENYING POST CONVICTION PETITION)."
The record reveals the following facts pertinent to this appeal. Appellant and Justina Hedden had known each other for a number of years. Sometime during the summer of 1996, appellant invited Ms. Hedden and her daughter, Jessica Herdman (d.o.b. 3-3-88), to live with him at his home in Vincent, Ohio. Although appellant was "madly in love" with Ms. Hedden at the time, this relationship was intended to be strictly a "business arrangement." Appellant was an owner/operator of a semi-truck and needed assistance with his bookkeeping and taxes. Ms. Hedden, who was at that time having "problems" living with her mother and also needed funds to pay restitution on a previous "welfare fraud" conviction, agreed to perform these services for appellant at the rate of $5 per hour plus board. This arrangement lasted until October of 1996 when Ms. Hedden and her daughter, Jessica, left the residence because of a dispute over "financial matters."[1]
In the spring of 1997, Jessica's third grade class took part in a Child Abuse Prevention (CAP) program intended to teach children about "good and bad" touching. At the end of the program, instructors asked if any of the children wanted to speak with them about the material that had been discussed. Jessica stepped forward and told them that appellant had previously forced her to have sexual intercourse with him.
The matter was referred to Tina White, a caseworker with Washington County Children Services (WCCS), for investigation. Ms. White later contacted Washington County Sheriff's Department Detective Brian Schuck to arrange an interview with appellant. On June 30, 1997, appellant appeared unexpectedly at the Sheriff's Office to see a "Sergeant Jobes" about pressing theft charges against Ms. Hedden. When Detective Schuck learned of his presence in the building, he contacted Ms. White. Schuck and White met with appellant and asked him if he would be willing to talk with them. Appellant agreed and was subsequently questioned about Jessica's accusations. Although appellant adamantly denied ever having engaged in sexual intercourse with the girl, he did make a number of other incriminating statements.
On August 25, 1997, the Washington County Grand Jury returned an indictment charging appellant with two (2) counts of rape in violation of R.C. 2907.02 (A) (1) (b) (B) as well as one (1) count of gross sexual imposition in violation of R.C. 2907.05 (A) (4). Appellant pled not guilty to these charges. The matter proceeded to a jury trial on January 21-22, 1998, at which time Jessica described how appellant "forced [her] to have sex with him." Jessica recounted for the jury how she watched television one day when appellant instructed her to go outside and clean the cab portion of his semi-truck. Jessica expressed reluctance to perform that task which prompted appellant to grab her by the wrist, walk her outside to the truck and pull her up into the cab. Jessica then described how appellant laid her on the bed, undressed her and ultimately "stuck" his "pee pee" into her "vagina." Jessica testified that the assault stopped only when a next door neighbor arrived home. At that point, appellant allegedly ordered Jessica to get dressed. Appellant warned Jessica that he would hurt her if she ever told anyone about the incident.
The prosecution also called Detective Schuck to testify as to some of the statements made by appellant during his June 30, 1997 interview. Although appellant denied that sexual contact had taken place, appellant admitted that he kissed Jessica on the breast and "around the vaginal area." He also admitted to "[f]rench kissing" her and stated that Jessica was "one hell of a kisser." Appellant went on to tell Detective Schuck and Ms. White that he had masturbated on occasion while laying next to Jessica in the back of his truck and that he had once been rubbing the girl's vaginal area and stuck his finger "into her vagina down to the first knuckle." Appellant explained these actions by stating that he and Jessica had a special "bond" between them and that the eight (8) year old girl was "very mature for her age" and seemed like "a fully grown woman." He also claimed that Jessica freely consented to all these activities and enjoyed them.
Testifying in his own defense, appellant conceded that he made the aforementioned statements to Detective Schuck and Ms. White. Appellant asserted, however, that the statements were not true and were given only because that was what they (Detective Schuck and Ms. White) "wanted to hear." Appellant explained that he was threatened with jail if he did not cooperate and, essentially, admit the allegations against him. He testified that "the truth" was that he "didn't do anything." Appellant alluded to the possibility that Jessica had been prompted to make these accusations by her mother (Ms. Hedden) "who [wa]s going to get revenge no matter what it takes."
At the conclusion of trial, the State dismissed one of the rape counts. The two remaining counts were given to the jury. The jury returned a verdict and found appellant guilty of gross sexual imposition. The jury was unable to reach a verdict on the second rape charge, however, and the court subsequently declared a mistrial on that count.[2] Appellant was ultimately sentenced to a three year definite term of incarceration and was classified as a "sexual predator." This court affirmed that classification but reversed the trial court's judgment on a sentencing issue.State v. Mollohan (Aug. 19, 1999), Washington App. No. 98CA13, unreported (hereinafter referred to as "Mollohan I"). The matter was then remanded to the trial court for re-sentencing.[3]
Appellant filed his petition for postconviction relief on March 15, 1999, arguing that he had been deprived of effective assistance of trial counsel. The basis for his argument centered around a note purportedly written by Jessica, and then referred to at trial, wherein she accused him of raping her. Appellant challenged the validity of the note in his petition charging that it was not written by the child at all, but rather by her mother. Appellant asserted that he relayed his concerns to counsel before trial but was told "that there was no way to get an order for a handwriting analysis" and that, in any event, such analysis "would cost too much." Nevertheless, appellant continued, his mother obtained a copy of the note after trial and forwarded it to "William Bennett, a document examiner," along with writing samples from mother and daughter. Mr. Bennett examined the writings and, in a letter of opinion, concluded that it was "very unlikely" that Jessica wrote the note whereas her mother was "very capable" of performing that function. Because his attorney failed to pursue a similar analysis of the note prior to trial, appellant concluded, counsel's representation was ineffective and the conviction and sentence should be set aside. Appellant submitted a copy of Mr. Bennett's opinion letter, as well as appellant's own affidavit, in support of that request.
The State's answer denied that appellant was entitled to postconviction relief and asserted that his claims were barred from consideration by res judicata. On April 13, 1999, the State moved for summary judgment again raising the issue of resjudicata and further arguing that appellant could not demonstrate the requisite elements of constitutionally ineffective representation. Appellant filed a memorandum in opposition and the trial court ultimately overruled the summary judgment motion finding that there were "genuine issues of fact that need[ed] to be resolved . . ."
The matter came on for hearing on August 27, 1999, at which time appellant emphatically testified that Jessica's note was "a fake" and was written by the girl's mother who was "out to get revenge" and was "setting [him] up." Appellant further recounted how he conveyed these concerns to counsel around the time of his 1997 suppression hearing, but was told by them "that there was no way they could get it [a handwriting analysis] done."
The attorneys who represented appellant at trial were then called by the State and each refuted their former client testifying that he never mentioned to them, until after trial, any concern that the note might have been forged by Jessica's mother. The matter was taken under advisement and, on September 16, 1999, the court rendered its decision, together with findings of fact and conclusions of law, and essentially determined that appellant's claim was barred by res judicata. The trial court entered judgment to that effect on October 13, 1999, and this appeal followed.
We shall jointly consider the two (2) assignments of error as they both raise the same general issue which is whether the trial court properly ruled that appellant's ineffective assistance of counsel claim was barred by the doctrine of res judicata.
Our analysis begins with the well-settled premise that the doctrine of res judicata applies in determining whether postconviction relief should be afforded under R.C. 2953.21. Seee. g. State v. Szefcyk (1996), 77 Ohio St.3d 93, 671 N.E.2d 233, at the syllabus; State v. Nichols (1984), 11 Ohio St.3d 40, 42,463 N.E.2d 375, 377; State v. Perry (1967), 10 Ohio St.2d 175,226 N.E.2d 104, at paragraph eight of the syllabus. This means that a movant cannot raise, for purposes of postconviction relief, any error which was raised or could have been raised on direct appeal. See State v. Reynolds (1997), 79 Ohio St.3d 158,161, 679 N.E.2d 1131, 1133; State v. Lentz (1990), 70 Ohio St.3d 527,529, 639 N.E.2d 784, 785; State v. Juliano (1970), 24 Ohio St.2d 117,119, 265 N.E.2d 290, 292. We note that different counsel represented appellant on direct appeal and at trial. Therefore, appellant could have raised the issue of ineffective assistance of trial counsel on direct appeal and we agree that he is now barred by res judicata from doing so here.[4]
Appellant counter argues to the effect that the record did not contain all the facts needed to determine the merits of the claim and that this should preclude application of res judicata in this particular instance. We disagree. On April 8, 1998, several weeks after the trial court filed the original sentencing entry and more than a week before appellant filed the first notice of appeal, appellant moved for "additional discovery" in the causesub judice. He asked for writing samples from both Jessica and her mother to submit "for the purpose of handwriting analysis." Appellant gave the following explanation for that request:
 "* * * Jessica, the alleged rape victim, testified that she had written a note indicating that she had been sexually molested. While on the stand, she identified the note that she had supposedly written.
 Following the trial, a copy of this note, along with separate writing samples of both Justina and Jessica, were forwarded to William T. Bennett, a handwriting analyst currently working through the State Attorney General's Office. Mr. Bennett indicated that it is very unlikely that Jessica Herdman wrote the note in question. He also expressed the opinion that Justina Hedden is very capable of writing that note."
It is clear from this excerpt that everyone involved in the cause sub judice was aware of Mr. Bennett's opinion concerning the handwriting of the note well before the direct appeal inMollohan I. Appellate counsel could have argued that trial counsel was ineffective for failing to raise this issue at trial or in a post-trial Crim.R. 33 (B) motion. That argument was not made, however, and the trial court correctly concluded that the issue is now barred by res judicata.
Even assuming arguendo that the issue was not barred from consideration, we would still find little merit in appellant's argument that he received constitutionally ineffective representation and that his conviction should be reversed. In order to prove an ineffective assistance claim, one must show both defective performance by trial counsel as well as prejudice resulting therefrom. See Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674, 693, 104 S.Ct. 2052, 2064; alsosee State v. Goodwin (1999), 84 Ohio St.3d 331, 334,703 N.E.2d 1251, 1256; State v. Goff (1998), 82 Ohio St.3d 123, 129,694 N.E.2d 916, 929; State v. Loza (1994), 71 Ohio St.3d 61, 83,641 N.E.2d 1082, 1105. Appellate courts are admonished to "be highly deferential" to counsel's performance and refrain from second guessing strategic decisions. See State v. Carter (1995), 72 Ohio St.3d 545,558, 651 N.E.2d 965, 977; State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379-380. Both of appellant's trial attorneys testified that appellant did not make them aware of his concerns about the note in question being forged until after the trial. The trial court found this to be the more credible explanation and, thus, trial counsel can hardly be cited for deficient performance for failing to challenge a note that they did not suspect as being forged. One of the attorneys also testified that he refrained from filing a motion for new trial after appellant informed of his concerns because the outcome of the first trial had been "quite good" and "advantageous." We believe that this was a legitimate matter of trial strategy and decline to find deficient performance. Furthermore, we note that appellant's counsel at trial challenged the substance, but not the actual penmanship, of the note in question as originating with Ms. Hedden and not with Jessica.
Moreover, we are not persuaded that appellant could demonstrate the requisite prejudice necessary to reverse his conviction. We note again that this note was not the sole evidence against appellant. Other testimony, including the account of some very incriminating statements appellant made to Detective Schuck and Ms. White, appears in the record. This Court is not persuaded that, given those statements, the outcome of trial would have been otherwise had the opinions of Mr. Bennett been adduced.
Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
 ________________________ Peter B. Abele, Judge
[1] It was uncontroverted that part of this dispute arose from appellant's failure to pay Ms. Hedden for her work. Appellant also claimed, however, that Ms. Hedden had embezzled in excess of $10,000 from his "comp data card" account while living at the residence.
[2] The State prepared to re-try appellant on the rape charge but, on April 16, 1998, the trial court entered judgment sustaining appellant's motion to dismiss that count on grounds that a second trial would violate his double jeopardy rights to be free from successive prosecutions for the same offense.
[3] Judgment was entered on October 15, 1999, re-sentencing appellant to a two (2) year definite term of imprisonment.
[4] Claims of ineffective assistance of counsel are not barred by res judicata when one is represented by the same counsel on direct appeal as at trial. See State v. Pierce (1998), 127 Ohio App.3d 578,585, 713 N.E.2d 498, 502; State v. Payton (1997),124 Ohio App.3d 552, 556, 706 N.E.2d 842, 844. This is because appellate counsel cannot reasonably be expected to make an argument as to his or her own ineffectiveness. Pierce, supra at 585, 713 N.E.2d at 502; also see State v. Goodwin (May 27, 1999), Cuyahoga App. No. 72043, unreported.