**Frank M. GAITO, C-7482, Appellant,**

**v.**

**Joseph R. BRIERLEY, Appellee.**

**No. 72-1977.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 2, 1973.

Resubmitted Under Third Circuit Rule 12(6) Sept. 4, 1973.

Decided Sept. 21, 1973.

Errol S. Miller, Pittsburgh, Pa., for appellant.

Robert W. Duggan, Dist. Atty., Robert L. Eberhardt, J. Kent Culley, Asst. Dist. Attys., Pittsburgh, Pa., for appellee.

Submitted Under Third Circuit Rule 12(6) on July 2, 1973.

Before GIBBONS and HUNTER, Circuit Judges.

Resubmitted Under Third Circuit Rule 12(6) on Sept. 4, 1973.

Before ALDISERT, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Frank Gaito appeals from an order of the United States District Court for the Western District of Pennsylvania denying, after an evidentiary hearing, his petition for a writ of habeas corpus. Gaito's sole contention is that two required appearances before a jury in his prison clothes deprived him of his fourteenth amendment right to due process of law.

Gaito was convicted in 1959 in the criminal courts of Allegheny County, Pennsylvania, on charges of burglary, assault with intent to kill, and a violation of the Pennsylvania Uniform Firearms Act of 1939. A series of appeals and petitions culminated in the granting of a new trial by the Supreme Court of Pennsylvania because it found that an oral confession which the prosecution had introduced in the first trial was involuntary. Commonwealth ex rel. Gaito v. Maroney, 422 Pa. 171, 220 A.2d 628 (1966).

At his second trial, it is undisputed that Gaito was transported from the State Correctional Institution at Pittsburgh to the jury selection in his prison garb. This prison garb consisted of matching brown denim shirt and pants,

work shoes, and a heavy dark brown corduroy coat. According to the affidavit of Edward Anent, a prison official, it was standard policy to take men to court in prison garb unless the court order specified that they were being sent for trial, in which event a suit would normally be furnished. Since Gaito's court order "only stated [that] he was to be brought to court," he was not provided with a suit. Consequently, while the jury was being chosen, appellant sat in the courtroom in his prison clothes. No objection to this procedure was made on that day by either appellant or his court-appointed attorney.

The next morning, according to Gaito's testimony at the evidentiary hearing, his sister brought his civilian clothes to the prison, but a guard refused to permit him to return to his cell to put them on. Then, while he was waiting for his trial to start, appellant says that another prisoner told him about a recent decision from the Eastern District of Pennsylvania which purportedly held that it was prejudicial error to try a man in his prison clothes.[1] Based on this information, Gaito himself asked the trial judge to declare a mistrial so that a new jury could be picked. This motion was denied, and appellant's trial began with him dressed in his prison garb in full view of the jury. Several witnesses testified during the morning, and at the lunch recess Gaito obtained his civilian clothes which he wore for the rest of the trial. He was again found guilty and, after exhausting his state remedies, he filed the present habeas corpus petition.

In refusing to grant a writ of habeas corpus, the district court stated:

"Assuming, without deciding, the law to be that the appearance of a defendant before the jury in prison clothes is a violation of due process without a specific showing of actual prejudice, . . . I find factually that the clothes in which the petitioner appeared were not reasonably identifiable as prison clothes. The petitioner testified that at times he had his coat on and at times he had it off. But neither the coat, the shirt, nor the pants bore any numbers, letters, or insignias. There were no identifying or branding marks on the uniform, with or without the coat. To me, then, and presumably to the jury, the clothes, which were clean and pressed and in no way demeaned the petitioner, appeared to be work clothes rather than prison clothes. There is no contention that any other circumstances of the retrial marked the petitioner as a prisoner. Therefore, having failed to sustain his burden of proving that the clothes which he wore were probably discerned by the jury to be prison clothes, the petitioner will be denied a writ of habeas corpus."

Although there is some authority to the contrary,[2] we accept the majority view that compelling a defendant to appear before a jury in his prison clothes unconstitutionally infringes his due process right to be presumed innocent until proven guilty.[3]  E.g., Bentley

---

1. United States ex rel. Diamond v. Social Service Dept., 263 F.Supp. 971 (E.D.Pa. 1967).

2. See Hall v. Cox, 324 F.Supp. 786 (W.D. Va.1971); Xanthull v. Beto, 307 F.Supp. 903 (S.D.Tex.1970); McFalls v. Peyton, 270 F.Supp. 577 (W.D.Va.1967), aff'd 401 F.2d 890 (4th Cir. 1968), cert. denied 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486 (1969).

3. We agree with the Fifth Circuit's observation in Hernandez v. Beto, 443 F.2d 634, 637 (5th Cir. 1971), that "[a] defendant may

not remain silent and willingly go to trial in prison garb and thereafter claim error." This would constitute a voluntary waiver of his right which would negate the necessary element of compulsion. For example, a prisoner may want to appear in prison garb as part of a trial strategy designed to evoke jury sympathy. In the present case, the government contends that appellant's claim that he was required to appear before the jury in his prison garb was purposely manufactured because appellant was offered civilian clothes before the trial but refused to

v. Crist, 469 F.2d 854 (9th Cir. 1972); Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), cert. denied 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971); Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967); Commonwealth v. Keeler, 216 Pa.Super. 193, 264 A.2d 407 (1970); Miller v. State, 249 Ark. 3, 457 S.W.2d 848 (1970); People v. Shaw, 381 Mich. 467, 164 N.W.2d 7 (1969); People v. Zapata, 220 Cal.App.2d 903, 34 Cal.Rptr. 171 (1963), cert. denied 377 U.S. 406, 84 S.Ct. 1633, 12 L.Ed.2d 495 (1964); Eaddy v. People, 115 Colo. 488, 174 P.2d 717 (1946); Collins v. State, 70 Okl.Cr. 340, 106 P.2d 273 (1940); Shultz v. State, 131 Fla. 757, 179 So. 764 (1934). *See* Watt v. Page, 452 F.2d 1174 (10th Cir. 1972). Consequently, the issue which we must now decide is whether the district court was clearly erroneous in its factual finding that the clothes in question "were not reasonably identifiable as prison clothes."

Several photographs were taken of appellant in the attire which he was required to wear before the jury. We have examined these photographs, and it seems to us probable that at least some of the jurors recognized this attire as a prison uniform. The government argues that this is unlikely since the clothes worn by Gaito bore no markings and were of a type commonly worn by working men such as gas station attendants or delivery men. This is not persuasive, however, in light of the following testimony from Gaito:

"Q. Was anyone else in the courtroom that day [of the trial]?
\*    \*    \*    \*    \*    \*

"A. Not in the courtroom, no.

"Q. Did you see any people in the building wearing those kind of clothes?

"A. Yes, there was about five or six other guys up there for trials, hearings or trials that day.

"Q. And what were the other facts about those people that distinguished them from the rest of the people in the building, in addition to their uniform?

"A. We all had these same kind of clothes on.

"Q. The same kind of clothes on. Were they walking alone or—

"A. No, no, they were being led by the sheriffs.

"Q. The other people in the jury room, the other men, were they all wearing coats and ties?

"A. Everybody that I know of all had civilian clothes on, yes, sir.

"Q. So you were the only one in uniform when your jury was selected?

"A. Yes, sir."

On redirect, Gaito reiterated his direct testimony:

"Q. Mr. Gaito, on the discussion of this jacket, whether it was distinctive, you have told us before that a number of other men were seen wearing similar uniforms in the halls of the courtroom before proceedings.

"You saw them. You assumed other people saw them, and they were handcuffed to deputy sheriffs or someone. Were they wearing jackets like that?

"A. Yes sir.

"Q. Were there any other jackets like that, anybody else wearing jackets like that that you saw?

"A. Not no civilians, not that I knew of."

In addition to Gaito's testimony, his court-appointed attorney, who was called as a government witness, made the following statements on cross-examination:

"Q. Mr. Zamos, was anyone else in the courtroom dressed in garb similar to Mr. Gaito when the jury was selected?

accept them. The government points to nothing in the record to support this assertion, and we have not found anything. Un-

der these circumstances, we cannot find a voluntary waiver.

"A. Not that I can recall.

"Q. Were any of the prospective jurors dressed in working uniforms?

\* \* \* \* \* \*

"A. Not as I can recall.

"Q. How were the male jurors dressed?

"A. Ordinary garb, civilian garb.

"Q. Coats and ties?

"A. Coats, ties, yes.

"Q. Had you ever seen men dressed like Mr. Gaito was? Have you ever seen men in this kind of uniform before?

"A. Yes.

"Q. Where had you seen them?

"A. In the criminal courts.

"Q. In the chambers, in the hallways?

"A. Both.

"Q. And when they appeared in the hallways of the various courts, you heard Mr. Gaito's testimony that they were handcuffed to deputy sheriffs when they were dressed this way.

"Is that your recollection, too, whenever you saw people dressed this way in the hallways, they were handcuffed to deputy sheriffs?

"A. Sometimes, sometimes not.

"Q. But sometimes they were dressed that way, is that right?

"A. Yes."

 After careful consideration of both the above testimony and the pictures of appellant, we conclude that the clothes worn by Gaito during jury selection and on the first half day of trial were reasonably identifiable as prison clothes and that the district court's finding to the contrary was clearly erroneous and must be rejected.

The government asserts that even if there was error in requiring appellant to appear before the jury in prison garb, the error was harmless beyond a reasonable doubt because Gaito himself admitted on cross-examination that he had been in the penitentiary. The problem with this argument is that there is no way to know why appellant made this admission. He knew that the jury had already seen him in his prison uniform, and he may have believed that there was no point in trying to conceal the fact that he was a prisoner. For this reason alone, we cannot say the error made by the state trial court was harmless beyond a reasonable doubt.

The order of the district court denying the writ of habeas corpus will be reversed. The case is remanded to the district court to issue a writ of habeas corpus unless the Commonwealth of Pennsylvania grants Gaito a new trial within a reasonable period of time to be prescribed by the district court.