Thomas A. BOSWELL,
Petitioner-Appellant,

v.

STATE OF ALABAMA et al.,
Respondents-Appellees.

Nos. 74–3839, 74–3840.

United States Court of Appeals,
Fifth Circuit.

Aug. 16, 1976.

Jack Sprinkle, Mobile, Ala. (Court-Appointed), for petitioner-appellant.

Thomas W. Sorrells, Daniel J. Thompson, Carol Jean Smith, Asst. Attys. Gen., William J. Baxley, Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before TUTTLE, GODBOLD and DYER, Circuit Judges.

GODBOLD, Circuit Judge:

In this habeas corpus case brought by a state prisoner the principal issue is whether petitioner was tried before an impartial jury. The day prior to his trial he appeared, shackled and in prison garb, before the jury venire from which on the following day his trial jury was selected. The District Court denied the writ, and we affirm.

Boswell was convicted in the Circuit Court of Mobile County, Alabama, of selling marijuana in violation of state law, and sentenced to a six-year term to commence following a sentence already being served in a federal prison. The Supreme Court of Alabama affirmed.[1] Boswell filed his petition pro se, then counsel was appointed and represented him in the evidentiary hearing. The District Judge dismissed the petition in part, for failure to exhaust state post-conviction remedies, and denied relief in all other respects.[2]

I

The habeas petition alleged that Boswell was made to appear in the presence of the entire jury venire "Bare-footed, Unshaven, Hair uncombed, hand-cuffed and chained through no fault of his own." On Monday, September 25, 1972, Boswell was transferred from the city jail to the state Circuit Court in Mobile. He waived reading of the indictment and pleaded not guilty. His attorney presented an oral motion for inspection and analysis of the marijuana. It is not disputed that these proceedings occurred in the presence of the jury venire. The habeas court's findings of fact state that the trial prosecutor: "did not contradict petitioner's testimony [regarding his appearance][3] save for his characterization

1. *Boswell v. Alabama*, 290 Ala. 349, 276 So.2d 592 (1973).

2. The District Court held that Boswell exhausted state remedies on his prison garb complaint. In part II of this opinion we review the court's disposition of the remaining contentions.

3. Boswell described his appearance at arraignment as follows:

"Q: I will ask you this, were you, as Mr. Alonzo [trial counsel] testified, were you brought before the Jury Venire in a handcuffed, chained, unshaven, uncombed, etcetera, as he testified to?

"A: Yes, sir, I definitely was. I would like to add that it was through no fault of my own and I have affidavits from other people that was in the jail at that time and that I was taken over there for no apparent reason. The Marshals told me it was on the order of Randy Butler and I was placed in the front row in front of the entire venire while they was being selected into lots of twelve and I was handcuffed, barefooted and chained and

see, I didn't have any idea I was going to report or anything. In City Jail you are not allowed razors or anything or mirrors or anything like that in your cell. And you have to be warned the day ahead for it. They give it to you the night before you go to court, but I was never notified that I was going that day or anything. I was made to sit for two and a half hours and after two and half hours, they was asking the Jurors all kinds of questions about did they have any reason they wanted to leave and stuff like that; Hocklander [Honorable Joseph M. Hocklander, presiding judge at Boswell's trial] came in and just as he was coming in, they moved me in a side door, the Marshals did, and he came up on the stand and the Marshal said we were going to leave now. And, we started to leave, and I just walked out in front of the Judge and I said, Your Honor, this isn't right, I've been sitting here for two and a half hours in front of the entire venire, handcuffed, barefooted and chained and all this. He told the Marshals then, don't bring that man in court like that again and bring him in the back

of whether petitioner was neat or mangy-looking. There is no question that Boswell appeared in court on September 25, 1972, the day of arraignment, in chains and handcuffs and with prison clothing." Boswell made no contention that he was forced to appear in this fashion during his trial, which began the next day with jury selection and extended through Wednesday, September 27. Sentencing was on September 28.

The District Court stated that it did not sanction bringing a non-dangerous defendant to court in the manner employed for Boswell, but found no violation of constitutional rights. The court's opinion emphasized petitioner's appearance *at trial*[4] sans prison garb, handcuffs, or chains, concluded that the probable impact upon the jury,[5] if any, was slight, and found that because the record established petitioner's guilt beyond a reasonable doubt, any error was harmless. The court reasoned:

> We are faced in this case with a single appearance before the entire jury venire. There is no evidence in the record, and none was presented at the federal hearing, that any of the petit jurors who tried Boswell recognized or identified him in the dress and condition he complains of. Petitioner's counsel did not ask the trial judge to qualify the jury on this issue.

> \* \* \* \* \* \*

> We cannot equate the single appearance of the petitioner in handcuffs and disheveled dress with the trial of a defendant in prison clothes or in chains.

door. Don't parade him through the front door and lay out certain rules then."

**4.** The District Court correctly observed: "The Fifth Circuit has not decided a case directly in point; convictions obtained when a defendant is PUT TO TRIAL wearing prison clothes throughout have been reversed. *Brooks v. Texas*, 381 F.2d 619 (5th Cir. 1967)."

**5.** Citing *Hernandez v. Beto*, 443 F.2d 634, 637 (CA5, 1971).

**6.** The *Estelle* principle applies with equal force to Boswell's appearance in both identifiable prison clothes and handcuffs. Granting to Boswell maximum protection of his fundamental

It is firmly established in this circuit that "it is inherently unfair to try a defendant for crime while garbed in his jail uniform, especially when his civilian clothing is at hand. No insinuations, indications or implications suggesting guilt should be displayed before the jury." *Brooks v. Texas*, 381 F.2d 619, 624 (CA5, 1967). In *Hernandez v. Beto*, 443 F.2d 634, 636 (CA5, 1971), we said that "trying [an accused] in his prison clothing infringed a fundamental right—the presumption of innocence." In *Estelle v. Williams*, —— U.S. ——, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the Supreme Court recognized this same right as a basic component of the constitutionally-secured right to a fair trial, and the Court held that the state cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes.[6]

It is implied in both the District Court's opinion and the state's brief that the fundamental right of an accused to the presumption of innocence is less endangered, and therefore less deserving of protection, at the pre-trial juncture than at trial. The constitutionally-based restraints on a defendant's appearing in garb suggesting guilt protect against the danger that impartial judgments from triers of fact might be impaired or precluded, which will, in turn, preclude fair trial. Application of the constitutional principle is not amenable to per se rules. Rather there must be case-by-case analysis within the analytical framework developed by the caselaw and embracing the fundamental right involved.[7]

right to the presumption of innocence, we focus on the communicative impact of his overall attire in the presence of veniremen for over two hours. It is therefore unnecessary to evaluate or consider analytical distinctions in cases where either an appearance in prison clothes or an appearance in handcuffs constituted the sole complaint.

**7.** *See Hernandez v. Beto*, 443 F.2d at 637. Our research discloses no federal cases conceptualizing discrete standards governing a defendant's appearance in prison garb before the venire. In *Gaito v. Brierley*, 485 F.2d 86 (CA3, 1973), the Third Circuit considered a habeas petitioner's contention that his compelled ap-

■ As pointed out by the Supreme Court in *Estelle v. Williams, supra,* the element of compulsion is crucial.[8] We can find no corroboration in the record for Boswell's testimony in the District Court that he complained to the jail attendants and to the trial judge, but the record is clear that his attorney brought the fact of Boswell's appearance to the attention of the trial judge on the day of the trial. After the jury had been selected, empanelled and recessed for the day, Boswell's counsel orally questioned the prejudicial impact of Boswell's attire, asserting two main grounds in support of a motion for continuance.[9]

■ Boswell's counsel objected on the day the trial began. But this court has construed the Supreme Court's opinion in *Estelle* to require more than that:

> We glean from this latest Supreme Court case that courts should not release state prisoners on a writ of habeas corpus because of jurors seeing a defendant in a situation which might negate the presumption of innocence, *unless the defendant has taken the steps at trial which might eliminate any possible prejudice.* (Emphasis added.)

*Wright v. Texas,* 533 F.2d 185, 188 (CA5, 1976). *Wright* reversed a grant of habeas to a petitioner who had demonstrated that during the selection of the jury the special veniremen were permitted to view him while he was handcuffed. The District

---

8. pearance in prison garb while the jury was being selected and again the next morning while he was being tried deprived him of due process. Without analytically distinguishing the two appearances, the court accepted "the majority view that compelling a defendant to appear before a jury in his prison clothes unconstitutionally infringes his due process right to be presumed innocent until proven guilty." *Id.* at 88. Cases which have considered the right of a handcuffed or shackled accused not to be viewed by potential jurors lend further support to the proposition that the fair trial rights of a defendant displaying physical indicia of guilt may be as endangered when he is viewed by the venire as when he is viewed by the jurors at his trial. See, e. g., *Wright v. Texas,* 533 F.2d 185, (CA5, 1976); *U. S. v. Bankston,* 424 F.2d 714 (CA5, 1970); *U. S. v. Wilkerson,* 453 F.2d 657, 660–661 (CA8, 1971), *cert. denied,* 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972).

8. Observing that courts confronted with similar facts "have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances," the majority concluded:

> "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury."

*Id.* at ——, 96 S.Ct. at 1695, 48 L.Ed.2d at 133 (citations omitted).

The Court noted with approval our circuit's earlier holding in *Hernandez v. Beto,* 443 F.2d at 637, that "[a] defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error," and our subsequent explication of that holding, as follows:

> "We held [in *Hernandez*] that the defendant and his attorney had the burden to make known that the defendant desired to be tried in civilian clothes before the state could be accountable for his being tried in jail clothes . . ."

*U. S. ex rel. Stahl v. Henderson,* 472 F.2d 556, 557 (CA5), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2166, 36 L.Ed.2d 694 (1973).

9. MR. ALONZA: " . . . I would also point out to the Court that yesterday morning when the entire jury venire was sitting in this courtroom, Thomas Boswell was paraded through the courtroom and made to sit somewhere up in front of this entire jury venire and the best I can describe it a mangy looking condition. His hair was uncombed, he was unshaven, he was barefooted with the exception of a pair of flip-flops or rubber thongs which to me would certainly create a bad impression on the entire jury venire from which we had to select this jury today. I was informed by Mr. Boswell and I believe Mr. Boswell informed Your Honor yesterday afternoon that this condition was through no fault of his own. He was taken out of the cell with inadequate time to dress, shave, comb his hair, put on his shoes. I think the jury has been . . . the venire has been prejudiced by his appearance but my main two objections to the proceedings at this time, Judge, are one the lack of the witness, Joe Hill; and two, the inopportunity of the Defendant to examine the evidence to be used in this trial."

THE COURT: "You stated several additional grounds from the ones you previously gave me but I will overrule your objection . . . I will deny your motion."

MR. ALONZA: "We would respectfully except, Judge."

Court held that there was a significant possibility that among those veniremen who viewed Wright in handcuffs were persons eventually selected to sit on the panel. Accordingly, the court found a violation of due process of law, which was not harmless error. As one of two specified grounds of reversal, we coupled our decision in *Hardin v. U. S.*[10] with the Supreme Court case of *Estelle* and reached this conclusion:

. . . We think that the petitioner waived error by failure to either examine the jurors for the purpose of excluding from the jury panel any member who may have viewed him in handcuffs, or to request an instruction from the court that handcuffs are no indication of guilt.

*Id.* at p. 187.

▇ In the present case counsel for Boswell successfully challenged some of the veniremen for possible prejudice, but on grounds unrelated to their previous view of him in prison garb. The habeas judge attached significance to this fact and to the absence of evidence that any of the petit jurors who tried Boswell recognized or identified him as the same person who had appeared previously in the dress and condition he complained of. However, even if decision were not based upon the failure to challenge on this issue and to explore it by voir dire, the same result is required on harmless error grounds. The Supreme Court has tacitly approved this circuit's application of the "harmless beyond a reasonable doubt" rule in cases raising the constitutional right at stake in this case. *Estelle,* —— U.S. *id.* at ——, 96 S.Ct. 1691, 48 L.Ed.2d at 131–133. We have held that the reviewing court's judgment on the harmless error inquiry must be based on its. reading of the record and on what seems to that court to have been the probable impact of the prison garb worn by defendant on the minds of the average jury. *Hernandez v. Beto, id.* at 637 [citing *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)]. From our analysis of this record "we can perceive no possible inference which clouds or conflicts any essential or material fact. Rather, all such facts lead unerringly to guilt." *Thomas v. Beto,* 474 F.2d 981, 983 (CA5), *cert. denied,* 414 U.S. 871, 94 S.Ct. 95, 38 L.Ed.2d 89 (1973). Petitioner did not deny making the unlawful sale of marijuana and in his testimony specifically admitted the material facts of the transaction. The record provides no evidentiary basis for evaluation of his sole defense, entrapment. Petitioner offered no proof of entrapment and has not briefed the issue in this court. Under the circumstances of this case the appearance of Boswell before the jury venire was harmless error beyond a reasonable doubt.

## II

Boswell has raised several other contentions either in brief, in oral argument, or in both.[11] We have examined each and find no reversible error.

AFFIRMED.

▇

---

**10.** 324 F.2d 553 (CA5, 1963). *Hardin* held that a defendant seen on an elevator by jurors was not entitled to a reversal of his conviction where the defense refused an offer of cautionary instruction and decided not to interrogate jurors as to possible prejudice.

**11.** The District Court properly dismissed, for failure to exhaust available state remedies, allegations relating to 1) illegal extradition, and 2) possible jury bias against petitioner's race, his beard, or his long hair.

These remaining issues were reviewed on the merits and decided against Boswell: 3) insufficient indictment; 4) insufficient time to prepare for trial; 5)double jeopardy; 6) entrapment; 7) right to counsel.