Peter J. McFARLAND, III

v.

Timothy ENGLISH, Superintendent, and The District Attorney of the County of Bucks, and The Attorney General of The State of Pennsylvania.

No. CIV.A. 99–378.

United States District Court, E.D. Pennsylvania.

Aug. 16, 2000.

Peter Goldberger, Law Office of Peter Goldberger, Ardmore, PA, for Peter J. McFarland, III.

Peter J. McFarland, III, Greensburg, PA, pro se.

Heather A. Castellino, Superintendent Respondent Dist. Attorney's Office, Doylestown, PA, for Timothy English.

**OPINION**

POLLAK, District Judge.

**I.**

Pending before this court is a Report and Recommendation in which the Magistrate Judge has recommended the denial of a habeas corpus petition, filed pursuant to 18 U.S.C. § 2254, in which Peter J. McFarland, III, challenges his 1992 conviction on drug charges in the Common Pleas Court of Bucks County, Pennsylvania.

In petitioning for habeas corpus, Mr. McFarland alleges five grounds for setting aside his conviction. The Magistrate Judge, in his opinion recommending denial of habeas corpus, has found two of the five

grounds deficient on the merits,[1] and has concluded that the other three grounds are procedurally defaulted—two because they were not properly raised in the state courts,[2] and the third because it "was deemed to have been waived by the Pennsylvania Courts."

## II.

This opinion will begin by addressing the provenance of the ground "deemed to have been waived"—namely, Mr. McFarland's contention that his right to a fair trial was fatally compromised by the state's failure, in contravention of *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), to fulfill its constitutional obligation to insure that Mr. McFarland, an accused in custody, would, at his jury trial, be provided with civilian clothes in substitution for his prison garb. This opinion will also refer to a closely related ground, which the state courts also deemed to have been waived: Mr. McFarland's contention that his due process rights were violated when he was seen by the jury in handcuffs.

The constitutional principle chiefly relied on by Mr. McFarland is the pronouncement of the Supreme Court, twenty-five years ago, speaking through Chief Justice Burger, that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Id.* at 512, 96 S.Ct. 1691. The Court's due process concern in *Estelle v. Williams* was that, when a jury sees the accused as one who has already been committed to prison, the presumption of innocence is undermined.

### A. *Pretrial and Trial Proceedings*

The circumstances under which the wearing of prison clothes at trial became an issue were these. On January 29, 1992—a few days before trial was scheduled to commence—a pre-trial motion to suppress, submitted on behalf of Mr. McFarland and his co-defendant Francis Kelly, was considered by Judge Edward G. Biester, Jr. After a hearing, the motion was denied. Peter Hall, Esquire, counsel for Mr. McFarland, then moved for a continuance of the trial. After explaining the reasons for not being prepared to go forward as scheduled, Mr. Hall noted a further problem:

> Obviously, my client does not have appropriate clothing for a jury trial.
>
> THE COURT: Clothing will be supplied. Clothing will be supplied.

Notes of Testimony (N.T.), 1/29/92, p. 3.

After Judge Biester observed that any application for a continuance should be taken up with his senior colleague, Judge Isaac Garb, S. Kip Portman, Esquire, counsel for Mr. Kelly, stated:

> Your Honor, I would like to join in Mr. Hall's request for a continuance. My client is not appropriately clothed.
>
> THE COURT: We'll take care of the clothing.

N.T., 1/29/92, p. 4.

On February 3, 1992, the trial got under way before Judge Ward F. Clark. At the close of the first day, the following colloquy took place:

> MR. HALL: This was made of record after the suppression hearing but my client is now dressed in prison greens. He has no alternative. My office has some clothes—none of them fit him and he does not have any street clothes that

1. Those grounds are: (1) alleged ineffective assistance of counsel at trial and in preparation for trial; and (2) admission at trial of a statement by Mr. McFarland allegedly elicited in contravention of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Those grounds are: (1) alleged "ineffective assistance of sentencing counsel . . . in allowing defendant to be placed twice in jeopardy by being punished twice for the same act;" and (2) alleged denial of "a timely and meaningful appellate review."

fit him. He gained weight and I would like it made of record he is not voluntarily appearing in obvious prison garb.

MR. PORTMAN: I will likewise join in that motion.

THE COURT: All right. We will recess until tomorrow.

Miss Muldoon,[3] I will keep you overnight. You are testifying in the morning. That is my decision.

So, you are still in the custody of the sheriff.

All right, recessed until 10:00 am tomorrow morning.

N.T., 2/3/92, pp. 28–29.

The next day, February 4, a police officer, called as a witness for the prosecution, gave testimony with respect to the arrest of Mr. McFarland in a motel room. A portion of the officer's direct testimony follows:

Q. Okay. Did you secure Mr. McFarland?

A. Yes.

Q. What do you mean "secure?"

A. Everyone that was in the room, the suite I would call it, was taken into the living room area and searched for weapons and handcuffed.

    \*    \*    \*    \*    \*    \*

Q. Who was in the room?

A. Peter McFarland who is seated at defendant's table between the two attorneys in prison greens. Francis Kelly seated on the end of the table with prison greens on and Mary Jane Muldoon.

Q. Indicating for the record both defendants Your Honor.

N.T., 2/4/92, p. 133.

On February 5, at the commencement of the third day of trial, the following colloquy took place:

MR. HALL: It came to my attention that after the evening recess yesterday, Mr. McFarland and Mr. Kelly were being escorted back to the holding cell and waiting for an elevator while handcuffed to one another, obviously, being escorted by several sheriffs. And at that time, the entire jury panel of fourteen came out. And there was not a confrontation, they all saw each other although it's already made a part of the record that my client, I'm sure, and Mr. Kelly are wearing a prison uniform was made a part of the record, that is not their choice. They don't wish to be here or to be in prison and referred to as prisoners. But being seen actually handcuffed I think changes the situation.

I would, number one, move for a mistrial based upon that; and number two, if that request is denied, I ask the Judge, the Court to voir dire the jurors to ascertain whether anything they observed yesterday adversely effected [*sic*] their ability to impartially decide this case.

MR. PORTMAN: On behalf of my client, I join in Mr. Hall's motion. My client advised me when he came to court of the incident in the hallway.

THE COURT: What is the prosecutor's position?

MR. FANNING: Your Honor, I believe that would not be grounds for a mistrial based on recent case law. And also, it was brought out on cross-examination yesterday, by McFarland's defense, that they were in fact, in prison; that was elicited from the defense. I do not believe that that would rise to a mistrial.

THE COURT: Side bar.

    \*    \*    \*    \*    \*    \*

(Whereupon there was a side bar discussion off the record.)

    \*    \*    \*    \*    \*    \*

THE COURT: The motions are noted of record and denied; bring in the jury, please.

N.T., 2/5/92, pp. 3–4.

On February 6, the prosecution rested. The first defense witness was Mr. McFar-

_____

3. Mary Jane Muldoon was arrested together with Mr. McFarland and Mr. Kelly.

land. He testified at length with respect to the events that led up to his being taken into custody. · In the course of his direct testimony Mr. McFarland stated:

A. . . . . I was very polite. After that he [Officer Barry] took me back out to another room helped me back down and took me to jail.

Q. And you have been in jail since?

A. Yes, I have.

N.T., 2/6/92, pp. 36–37.

The trial judge charged the jury on February 7. In the course of the charge, the jury was instructed as follows:

Now, you will note the defendants have been clothed in prison clothing here. You also I think noted and it has been put in the record, that you had seen them handcuffed; they're in custody in reference to this case. You heard that from the witness stand. You heard some references in this case to bail. You heard some references to Ms. Muldoon and what her bail situation was. The fact that these men have prison uniforms on and the fact that you saw them handcuffed, and the fact that they're in custody, because of the bail situation, you're not to infer anything against them. For these reasons they're presumed innocent.

### B. *Verdict and Sentence*

On February 10, 1992, the jury returned a verdict finding Mr. McFarland guilty of possession of a controlled substance, possession of a controlled substance with intent to distribute, possession of drug paraphernalia, and conspiracy. Thereafter, following the denial, in 1994, of his post-verdict motions, Mr. McFarland was sentenced to a term of incarceration of eight to sixteen years.

### C. *Post–Sentence Proceedings*

#### (1) *In the Courts of Pennsylvania*

Mr. McFarland appealed to the Superior Court, raising numerous issues. On October 12, 1995, the judgment of the Bucks County Court of Common Pleas was affirmed. *Commonwealth v. McFarland,* 449 Pa.Super. 698, 673 A.2d 403 (1995). Among the claims unsuccessfully advanced by Mr. McFarland were contentions that he had been denied a fair trial by (a) being required to wear prison clothes before the jury and (b) being viewed by the jury in handcuffs. With respect to these contentions, the Superior Court, in its opinion, said the following:

The next issue concerns a continuance which appellant allegedly sought at a preliminary hearing just before trial. This claim is predicated upon a statement appellant's counsel made at his preliminary hearing that appellant desired civilian clothing. The court responded, "Clothing will be supplied. Clothing will be supplied." N.T., 01/29/92, at 3. Appellant claims this led his counsel to conclude the court thereby took responsibility for providing him with appropriate civilian clothing so that counsel neglected to make other arrangements. Despite this statement by the court, clothing never was provided when trial commenced on February 3, 1992. Appellant contends that refusal to grant him a continuance under these circumstances constituted error and an abuse of discretion and denied him a fair trial. We disagree.

Our review of the certified transcripts provided to us on appeal does not reflect an objection or a request by appellant for a continuance or object [*sic* ] at *trial,* once it appeared he would not have appropriate civilian clothing. A request at the preliminary hearing does not preserve this issue at trial. Hence, this issue is waived. *See Commonwealth v. Muntz,* 428 Pa.Super. 99, 630 A.2d 51 (1993) (it is appellant's responsibility to provide a complete record for our review). As we find appellant has waived this issue, we do not address its merits. *Commonwealth v. Lloyd,* 376 Pa.Super. 188, 545 A.2d 890 (1988) (failure to object waives objection).

Appellant also argues that the trial court's refusal to grant a new trial after prospective jurors saw him escorted in handcuffs denied him a fair trial. Again, our review of the record reveals that counsel failed to object or make a motion. Accordingly, this claim also is waived.

Super. Ct. Mem. Op. at 8–10.

The Superior Court also addressed Mr. McFarland's related claim that trial counsel, in failing to insure that Mr. McFarland had proper civilian clothes at trial, had not adequately prepared the case for trial:

We now address appellant's argument of lack of preparation evidence [sic] by counsel's failure to ensure appellant had civilian clothing. We find no prejudice. We note that appellant explained to the jury why he was in prison clothing. Appellant stated:

[Appellant]: ... I was very polite. After that he took me back out to another room [and] helped me back down and took me to jail.

Mr. Hall [defense counsel]: And you have been in jail ever since?

[Appellant]: Yes, I have.

N.T., 2/6/92, at 36–37. Hence, we conclude the jury reasonably could conclude that appellant was in prison clothing for the offenses for which he currently was being tried. We also note that the court specifically instructed the jury:

Now, you will note the defendants have been clothed in prison clothing here. You also I think noted it has been put in the record, that you had seen them handcuffed; they're in custody in reference to this case. You heard that from the witness stand. You heard some references in this case to bail. You heard some references to Ms. Muldoon and what her

bail situation was. The fact that these men have prison uniforms on and the fact that you saw them handcuffed, and the fact that they're in custody, because of the bail situation, you're not to infer anything against them. For these reasons they're presumed innocent.

N.T., 2/7/92, at 5. We conclude appellant has failed to show that. he was prejudiced in these circumstances where he himself explained the reasons for his clothing and the jury similarly was instructed not to draw any unfavorable inferences. *See Commonwealth v. March,* 528 Pa. 412, 598 A.2d 961 (1991) (in order to prevail on ineffectiveness claim, petitioner must establish prejudice). Appellant was not prejudiced by counsel's failure to object where the reason for the prison clothing was explained to the jury, and there is not reason to surmise the jurors suspected appellant of committing other crimes from his prison clothing thereby improperly inferring his guilt of these crimes.

Super. Ct. Mem. Op. at 14–15.

A motion for reargument was denied. *See McFarland,* 673 A.2d 403. Thereafter, Mr. McFarland petitioned the Pennsylvania Supreme Court for allocatur. Allocatur was denied on June 26, 1996. *See Commonwealth v. McFarland,* 544 Pa. 682, 679 A.2d 228 (1996).[4]

On June 25, 1997, Mr. McFarland, invoking Pennsylvania's Post–Conviction Relief Act (PCRA), filed a petition in the Bucks County Court of Common Pleas collaterally challenging his conviction. The petition was dismissed without a hearing on July 7, 1997. On July 17, 1998, the Superior Court affirmed the Common Pleas judgment of dismissal. *See Commonwealth v. McFarland,* 724 A.2d 957,

---

4. On October 13, 1995, Mr. McFarland filed a *pro se* habeas corpus petition in this court, challenging what he felt to be excessive bail required by the Pennsylvania courts while he pursued his state court appellate remedies. On Mr. McFarland's subsequent motion to

withdraw his habeas corpus petition, the petition was dismissed without prejudice. *See McFarland v. Bucks County Common Pleas Court,* C.A. No. 95–6875 (E.D.Pa. Aug. 29, 1996).

No. 3171 Philadelphia 1997 (Pa.Super July 17, 1998), *appeal denied,* 557 Pa. 653, 734 A.2d 861 (Pa.1999).

The first issue presented to the Superior Court was the following:

WAS APPELLATE COUNSEL INEFFECTIVE IN FAILING TO RAISE TRIAL COUNSEL'S FAILURE TO REQUEST A CONTINUANCE TO PERMIT APPELLANT TO OBTAIN CIVILIAN CLOTHING FOR TRIAL AND FOR FAILING TO TIMELY OBJECT TO THE TRIAL JUDGE'S DECISION TO ALLOW APPELLANT TO PROCEED TO TRIAL IN PRISON CLOTHES?

The Superior Court resolved the issue as follows:

In his first issue presented, appellant claims that counsel on direct appeal was ineffective for failing to preserve a claim that trial counsel was ineffective. Appellant contends that trial counsel was ineffective for failing to request a continuance or object to appellant proceeding to trial dressed in prison clothes. Appellant's assertion merits no relief.

To be eligible for relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). An issue has been previously litigated if the highest appellate court in which the petition could have review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S.A. § 9544(a)(2).

In the instant case, the highest appellate court that could review the petition as a matter of right has already addressed the merits of the claim underlying appellant's first issue. Hence, appellant's contention is belied by the record. On direct appeal, appellate counsel raised claims of trial counsel's ineffectiveness, and this Court held that appellant's appearance in prison attire did not prejudice his right to a fair trial. *Commonwealth v. McFarland, supra* (memorandum opinion at 13–15). Thus, this Court concluded that appellant failed to establish trial counsel's ineffectiveness. *Id.* Accordingly, appellant's first issue is previously litigated and ineligible for relief under the PCRA. See 42 Pa.C.S.A. § 9543(a)(3).

Super. Ct. Mem. Op. at 5.

### (2) *On Federal Habeas Corpus: the Report and Recommendation of the Magistrate Judge*

In his current petition for a writ of habeas corpus,[5] Mr. McFarland has challenged, on due process grounds, being tried before a jury while wearing prison clothes, and being seen by the jury while he was handcuffed to his co-defendant and escorted by sheriffs. In addition, Mr. McFarland has contended that his trial counsel was ineffective in not protecting him against appearing before the jury in prison clothes.

The Magistrate Judge noted that the first contention, "involving the fact that the jury viewed petitioner in prison clothes, was deemed to have been waived by the Pennsylvania Courts. The last court to address this issue denied the claim on state procedural grounds, without reaching the merits of the claim." The Magistrate Judge, by way of supporting footnote, referred to the recital (quoted at greater length, *supra* pp. 8–9) of the Superior Court, in its October 12, 1995 opinion affirming Mr. McFarland's conviction on direct review, that "[o]ur review of the certified transcripts provided to us on appeal does not reflect an objection or request by appellant for a continuance or object [*sic*] at *trial,* once it appeared he would not have appropriate clothing. A request at the preliminary hearing does

---

**5.** As noted in footnote 4, *supra,* Mr. McFarland filed a petition for habeas corpus in this court in 1995 which, pursuant to his subsequent motion, was dismissed without prejudice.

not preserve this issue at trial. Hence this issue is waived." Super. Ct. Mem. Op. at 9. Accordingly, the Magistrate Judge concluded that Mr. McFarland's prison-clothing and handcuff contentions were "procedurally defaulted and barred from review."[6]

With respect to the ineffective-assistance-of-counsel aspect of the prison-clothing issue, the Magistrate Judge concluded:

> Petitioner additionally argues ineffective assistance of counsel for failing to provide him with civilian clothing and for failing to inform the judge that other clothing had been promised during the pre-trial suppression hearings. However, petitioner's appearance in prison clothing at trial was merely harmless error. The Pennsylvania Superior Court, in applying the applicable precedent, found that petitioner suffered no prejudice, and that this claim therefore lacked merit. Indeed, at trial petitioner testified that he was in prison at the time of trial. (N.T. 2/6/92 at 36–37). The Superior Court concluded that "the jury reasonably could conclude that [petitioner] was in prison clothing for the offenses for which he currently was being tried." *Commonwealth v. McFarland,* No. 04363 Philadelphia 1994 (Pa.Super. October 12, 1995). This also appears to be a reasonable application of precedent. Therefore, the state court's findings must be upheld. *See Matteo [v. Superintendent, SCI Albion,* 171 F.3d 877 (3d Cir.1999)].

Magis. Mem. Op. at 12–13.

### III.

#### A. *Waiver*

As explained above, the Superior Court concluded that the *Estelle v. Williams* claim urged by Mr. McFarland on direct review of his conviction was one that petitioner had "waived," with the result that,

the Superior Court stated, "we do not address its merits." The Superior Court's conclusion that the claim had been waived stemmed from the court's observation that "[a] request at the preliminary hearing does not preserve this issue at trial," and the court's finding that "[o]ur review of the certified transcripts provided to us on appeal does not reflect an objection or a request by appellant for a continuance or object [*sic*] at *trial,* once it appeared he would not have appropriate civilian clothing."

■ Mr. McFarland contends that the Superior Court's finding that the trial transcript "does not reflect an objection or request by appellant for a continuance or object [*sic*] at *trial*" is flawed. To ask a federal court sitting in habeas corpus to disregard a state court's finding is to shoulder a heavy burden. In ordinary course, a state court finding made pursuant to an evidentiary hearing must be presumed by a habeas court to be correct—a presumption that can be overcome only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Similar deference would appear to be owing to a state appellate court's scrutiny of the record presented to it in an adversary proceeding. In the case at bar, however, the Superior Court's recital that the trial transcript "does not reflect an objection or request by appellant for a continuance or object [*sic*]" is undermined by the trial transcript references set forth in Part II of this opinion.

■ The trial transcript establishes that, having been assured by the judge presiding at the pre-trial suppression hearing, on January 29, 1992, that "[c]lothing will be supplied," counsel for Mr. McFarland, on February 3, at the close of the first day of trial, pointed out to the trial judge that "[t]his was made of record after the suppression hearing but my client is now dressed in prison greens. He has no

6. As noted above, the Magistrate Judge found that two other of Mr. McFarland's contentions were procedurally defaulted because they were not properly raised in the state courts. *See supra* note 2 and accompanying text.

alternative .... I would like it made of record he is not voluntarily appearing in obvious prison garb." [7] After counsel for co-defendant Kelly stated that he "join[ed]" in that motion, the trial judge said: "All right. We will recess until tomorrow."

The trial transcript further establishes that on February 5, at the start of the third day of trial, counsel for Mr. McFarland advised the court that "after the evening recess yesterday" the "entire jury panel of fourteen" observed "Mr. McFarland and Mr. Kelly being escorted back to the holding cell and waiting for an elevator while handcuffed to one another." "[A]lthough it's already made a part of the record that my client, I'm sure, and Mr. Kelly are wearing a prison uniform ... that is not their choice. They don't wish to be here or to be in prison and referred to as prisoners. But being seen actually handcuffed I think changes the situation." Whereupon counsel for Mr. McFarland moved for a mistrial or, "if that request is denied, a voir dire of the jurors to ascertain whether anything they observed yesterday adversely effected [sic] their ability to impartially decide this case." Counsel for co-defendant "join[ed] in Mr. Hall's motion." The trial judge stated that "[t]he motions are noted of record and denied."

If it were the case that the trial transcripts were not included in the record before the Superior Court on direct review—if, that is, the Superior Court's "review of the certified transcripts provided to us on appeal" did not disclose the objections voiced by Mr. McFarland's trial

counsel because the "certified transcripts" made part of the record on appeal were incomplete—that would help to explain the Superior Court's finding of waiver. But, evidently, that is not the case. Mr. McFarland's habeas counsel—retained by Mr. McFarland subsequent to the entry by the Magistrate Judge of his Report and Recommendation—has represented to this court, in Petitioner's Objections to Report and Recommendation of United States Magistrate Judge, Served June 25, 1999, that "[a]ppellant's counsel did include in the Reproduced Record (the Pennsylvania state equivalent of a federal appellate Appendix) a complete copy of the suppression hearing and trial transcripts, which show all the pertinent objections and rulings." [8] Habeas counsel has also represented that "[t]he Superior Court's error in reading the record was called to its attention in a petition for reargument, which was summarily denied. The same error of fact underlying the holding of waiver was raised in the allocatur petition on direct appeal, which was likewise denied." [9]

The record before the Superior Court shows that Mr. McFarland, through counsel, challenged the propriety of being tried in prison clothes both prior to trial and at trial. "[F]inding [that] appellant has waived this issue," the Superior Court "d[id] not address its merits." Because the Superior Court's finding of waiver is without support, and hence cannot control the proceedings of this habeas court, the merits of Mr. McFarland's claim must be addressed.[10]

---

7. The Superior Court's observation that "[a] request at the preliminary hearing does not preserve this issue at trial" is, presumably, an accurate statement of Pennsylvania procedure. But it would seem to lack pertinence to a situation in which (1) the judge presiding at the preliminary hearing, far from advising counsel for the accused that the issue is not one to be considered before trial, recognizes the problem and gives his assurance that it will be taken care of, and (2) counsel does in fact raise the issue at trial.

8. Docket 15, p. 3

9. *Ibid.* The Commonwealth has not taken issue with these representations.

It should be noted that, since the submissions by Mr. McFarland to the Magistrate Judge were *pro se,* the Magistrate Judge, who concluded that the Superior Court's finding of waiver was binding in the habeas context, did not have the benefit of the submissions made by habeas counsel in Docket 15.

10. Notwithstanding that the Superior Court did not articulate any such rationale, an argument could conceivably be mounted that Mr. McFarland should be deemed to have waived

## B. *The Merits*

■ Although the Superior Court did not directly address the question whether Mr. McFarland had a valid *Estelle v. Williams* claim,[11] the court did discuss the implications of Mr. McFarland's appearance before the jury in prison attire in the context of considering—and rejecting—Mr. McFarland's alternative claim that his trial counsel was constitutionally deficient in not seeing to it that he was provided with civilian clothes. The Superior Court dismissed this alternative claim because the court "[found] no prejudice." The court's reasoning was as follows:

> We now address appellant's argument of lack of preparation evidence [*sic*] by counsel's failure to ensure appellant had civilian clothing. We find no prejudice. We note that appellant explained to the jury why he was in prison clothing. Appellant stated:
>
> > [Appellant]: ... I was very polite. After that he took me back out to another room. [and] helped me back down and took me to jail.
> >
> > Mr. Hall [defense counsel]: And you have been in jail ever since?
> >
> > [Appellant]: Yes, I have.

the prison-clothing issue because his attorney waited until the end of the first day of trial before voicing an objection, rather than raising the issue at the start of the first day, before the jury had seen his client. Such an argument would, however, be unavailing. In *Gaito v. Brierley*, 485 F.2d 86, 88 (3d Cir. 1973), the following took place:

> [W]hile the jury was being chosen, appellant sat in the courtroom in his prison clothes. No objection to this procedure was made on that day by either appellant or his court-appointed attorney.
>
> The next morning, according to Gaito's testimony at the evidentiary hearing, his sister brought his civilian clothes to the prison, but a guard refused to permit him to return to his cell to put them on. Then, while he was waiting for his trial to start, appellant says that another prisoner told him about a recent decision from the Eastern District of Pennsylvania which purportedly held that it was prejudicial error to try a man in his prison clothes. Based on this information, Gaito himself asked the trial

N.T., 2/6/92, at 36–37. Hence, we conclude the jury reasonably could conclude that appellant was in prison clothing for the offenses for which he currently was being tried. We also note that the court specifically instructed the jury:

> Now, you will note the defendants have been clothed in prison clothing here. You also I think noted that it has been put in the record, that you had seen them handcuffed; they're in custody in reference to this case. You heard that from the witness stand. You heard some references in this case to bail. You heard some references to Ms. Muldoon and what her bail situation was. The fact that these men have prison uniforms on and the fact that you saw them handcuffed, and the fact that they're in custody, because of the bail situation, you're not to infer anything against them. For these reasons they're presumed innocent.

N.T., 2/7/92, at 5. We conclude appellant has failed to show that he was prejudiced in these circumstances where he himself explained the reasons for his clothing and the jury similarly was instructed not to draw any unfavorable inferences. *See Commonwealth v.*

judge to declare a mistrial so that a new jury could be picked. This motion was denied, and appellant's trial began with him dressed in his prison garb in full view of the jury. Several witnesses testified during the morning, and at the lunch recess Gaito obtained his civilian clothes which he wore for the rest of the trial. He was ... found guilty and, after exhausting his state remedies, he filed the present habeas corpus petition.

*Id.* at 88. Reversing the district court, the Court of Appeals directed issuance of a writ of habeas corpus. *Gaito* is a case of special authority, in that it is first in the list of cases relied on by Chief Justice Burger in support of the Supreme Court's ruling in *Estelle v. Williams*, 425 U.S. at 504, 96 S.Ct. 1691, 48 L.Ed.2d 126; *see also infra* p. 21 (excerpting the relevant portion of *Estelle v. Williams*).

11. Indeed, the Superior Court at no point mentioned *Estelle v. Williams* by name.

*March,* 528 Pa. 412, 598 A.2d 961 (1991) (in order to prevail on ineffectiveness claim, petitioner must establish prejudice). Appellant was not prejudiced by counsel's failure to object where the reason for the prison clothing was explained to the jury, and there is not reason to surmise the jurors suspected appellant of committing other crimes from his prison clothing thereby improperly inferring his guilt of these crimes.

Super. Ct. Mem. Op. at 14–15.

To find "no prejudice" because "appellant explained to the jury why he was in prison clothing" is unpersuasive. At the point at which Mr. McFarland testified that the arresting officer "took me to jail," Mr. McFarland's right not to have the jury see him in prison clothes had twice been disregarded: *First,* when the trial judge responded "All right" but took no remedial action with respect to the objection voiced by counsel for Mr. McFarland at the close of the first day of trial. *Second,* when, on direct examination by the assistant district attorney, a police officer testifying on behalf of the Commonwealth identified "Peter McFarland" as "seated at defendant's table between the two attorneys in prison greens." [12] It is not the fact that an accused has been apprehended and taken to jail that lies at the heart of the *Estelle v. Williams* rule; the crucially destabilizing factor, incompatible with a fair trial, is the jury's continuing *perception* of the accused dressed in the uniform of criminality. As Chief Justice Burger explained:

> The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the proba-

bility of deleterious effects on fundamental rights calls for close judicial scrutiny. *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.

The potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the abstract. Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system. *Gaito v. Brierley,* 485 F.2d 86 (C.A.3 1973); *Hernandez v. Beto, supra;* *Brooks v. Texas,* 381 F.2d 619 (C.A.5 1967); *Commonwealth v. Keeler,* 216 Pa.Super. 193, 264 A.2d 407 (1970); *Miller v. State,* 249 Ark. 3, 457 S.W.2d 848 (1970); *People v. Shaw,* 381 Mich. 467, 164 N.W.2d 7 (1969); *People v. Zapata,* 220 Cal.App.2d 903, 34 Cal.Rptr. 171 (1963), *cert. denied,* 377 U.S. 406, 84 S.Ct. 1633, 12 L.Ed.2d 495 (1964); *Eaddy v. People,* 115 Colo. 488, 174 P.2d 717 (1946). The American Bar Association's Standards for Criminal Justice also disapproved the practice. ABA Project on Standards for Criminal Justice, Trial by Jury § 4.1(b), p. 91 (App. Draft 1968). This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a

---

**12.** In *Gaito v. Brierley,* 485 F.2d at 86, decided two years before *Estelle v. Williams,* our Court of Appeals addressed a strikingly similar scenario:

> The government asserts that even if there was error in requiring appellant to appear before the jury in prison garb, the error was harmless beyond a reasonable doubt because Gaito himself admitted on cross-examination that he had been in the penitentiary. The problem with this argument is

> that there is no way to know why appellant made this admission. He knew that the jury had already seen him in his prison uniform, and he may have believed that there was no point in trying to conceal the fact that he was a prisoner. For this reason alone, we cannot say the error made by the state trial court was harmless beyond a reasonable doubt.

*Id.* at 90.

continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play.

425 U.S. at 504–505, 96 S.Ct. 1691 [footnote omitted].

Nor was the sting of prejudice drawn by the trial court's attempt, in charging the jury, to explain to the jury why it was that "the defendants have been clothed in prison clothing here," and "that you had seen them handcuffed; they're in custody in reference to this case." What the trial judge sought to do was to connect the defendants' prison clothing, and their handcuffs, to their bail status:

> You heard some references to Ms. Muldoon and what her bail situation was. The fact that these men have prison uniforms on and the fact that you saw them handcuffed, and the fact that they're in custody, because of the bail situation, you're not to infer anything against them.

But the linking of prison attire, and of handcuffs, to the fact that the defendants could not make bail, only compounded the constitutional difficulty. Chief Justice Burger had occasion to point out, in *Estelle v. Williams*, the equal protection aspects of the prison attire-bail nexus:

> ... [C]ompelling an accused to wear jail clothing furthers no essential state policy. That it may be more convenient for jail administrators ... provides no justification for the practice ...

> Similarly troubling is the fact that compelling the accused to stand trial in jail garb operates usually only against those who cannot post bail prior to trial. Persons who can secure release are not subjected to this condition. To impose the condition on one category of defendants, over objection, would be repug-

nant to the concept of equal justice embodied in the Fourteenth Amendment. 425 U.S. at 505–506, 96 S.Ct. 1691.

## IV.

A. Undermining the Presumption of Innocence

*Estelle v. Williams*, decided in 1975, announced that compelling a criminal defendant to appear in identifiable prison clothes at a jury trial was so likely to eviscerate the presumption of innocence as to be incompatible with the Fourteenth Amendment. Over sixteen years later, in 1992, counsel for Peter McFarland brought to the attention of the judge presiding at a pre-trial suppression hearing that Mr. McFarland only had prison clothes, unacceptable garb for a jury trial. The judge assured counsel that proper clothes would be provided. Unhappily, that assurance was not implemented in subsequent proceedings.

When trial commenced, proper clothes had not been provided. When Mr. McFarland's attorney raised the issue at the end of the first day of trial, the trial judge said "All right," but the situation was not remedied. Not only was Mr. McFarland obliged to appear before the jury in prison clothes, a prosecution witness, on direct examination, gave an in-court identification of Mr. McFarland (and, indeed, of Mr. McFarland's co-defendant) as a person wearing "prison greens." At the start of the third day of trial, counsel for Mr. McFarland again advised the court of the impropriety of trying Mr. McFarland in prison garb. This time the issue was presented in the heightened context of Mr. McFarland and his co-defendant having been seen by the jury, after the trial recessed the previous afternoon, handcuffed together. Again, no remedy was provided.

The trial judge, in his charge, after explaining that the defendants' prison clothes and handcuffs were "because of the bail situation," went on to instruct the jury that "you're not to infer anything against them.

For these reasons they're presumed innocent."

## B. Relief Under § 2254

In conducting the inquiry mandated by 28 U.S.C. § 2254(d),[13] the first question which "the federal habeas court must determine [is] whether the state court decision was 'contrary to' Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if petitioner shows that 'Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.' *O'Brien* [*v. Dubois*, 145 F.3d 16, 24–25 (1st Cir.1998) ]." *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 891 (3d Cir. 1999). In this case, petitioner has made that showing.[14]

## V.

For the reasons given, Mr. McFarland's 1992 conviction and his subsequent sentence were constitutionally flawed and must be set aside. The Commonwealth may undertake to retry Mr. McFarland in a proceeding free of constitutional flaw. Such a retrial must, however, be commenced within forty-five days from the date of filing of this opinion and the accompanying order. If the Commonwealth does not commence a retrial of Mr. McFarland within the specified forty-five-day period, the Commonwealth must release Mr. McFarland from custody.

---

**13.** 28 U.S.C. § 2254(d)(1):
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

**14.** In view of this determination, it is unnecessary to consider whether there is merit in any of the other constitutional claims made by Mr. McFarland in challenging his conviction.