DECISION AND JUDGMENT ENTRY
On September 14, 2000, this court remanded this case to the trial court after finding appellant's fourth assignment of error well-taken "to the extent that the trial court failed to make the requested findings to explain its implied denial of appellant's motion to dismiss for speedy trial violations." State v. Grissom (Sept. 14, 2000), Erie App. No. E-99-029, unreported. We directed the trial court to make the findings of fact and conclusions of law requested by appellant to explain its denial of appellant's motion to dismiss for speedy trial violations. The trial court complied with this court's directive, and filed findings of fact and conclusions of law in this case on October 6, 2000. This court will now consider the remaining assignments of error that we previously held in abeyance. Id.[1]
While appellant styled his first assignment of error as an assertion that the trial court erred in not ordering separate trials for the separate incidents included in the indictment filed against him, in reality, he is arguing that he received ineffective assistance of counsel, because his trial counsel did not file a motion to sever. Appellant argues that joinder in his case was prejudicial pursuant to the standard set in Crim.R. 14 and that he should have been granted two separate trials. He says that since he was indicted for two separate, unrelated incidents that took place on two separate days, he should have been granted two separate trials, one for each incident.
He acknowledges that he has the burden to show that he was prejudiced by the joinder of the two incidents in one trial, State v. Roberts
(1980), 62 Ohio St.2d 170, 175, and that the trial court's denial of a motion to hold separate trials for the separate charges can only be reversed on appeal if the trial court abused its discretion. Opper v.United States (1954), 348 U.S. 84, 95. He also acknowledges that a motion for severance of counts is waived, pursuant to Crim.R. 14, if it is not renewed at the close of the state's case or at the close of all the evidence.
He contends that there was no clear distinction made between the two separate incidents when evidence was presented at trial. He says: "The cumulative effect of presenting all counts of Appellants [sic] indictment as one, big criminal act was simply too much for one jury. Said jury was left with little choice but to convict."
The state responds that since appellant did not object to all counts in the indictment filed against him being tried together, appellant did not preserve the error for appeal. Alternatively, the state says that any error that did occur can only be addressed if it rose to the level of plain error. The state says there is no showing of plain error in this case because the evidence relating to the separate incidents for which appellant was charged was direct and uncomplicated, making it easy for the jury to segregate the evidence to decide if the state met its burden of proof on the separate charges. See State v. Brooks (1989),44 Ohio St.3d 185. The state says the jury was clearly able to separately consider the evidence relating to the separate charges because it found appellant guilty of some of the charges and not guilty of other charges.
We agree with the state that absent plain error, appellant is not entitled to a new trial due to any alleged error relating to the joinder of all the charges against him in one trial. Plain error is an:
 "Obvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.'" _State v. Craft (1977), 52 Ohio App.2d 1, 7, 367 N.E.2d 1221 (quoting United States v. Atkinson
(1936), 297 U.S. 157, 160, 80 L.Ed. 555, 56 S.Ct. 391).
After carefully reading the trial transcript in this case and reviewing the record, we agree with the state that no plain error exists in this case. The evidence relating to each of the separate incidents that led to the charges against appellant was presented to the jury in such a way that it was easy for the jury to discern that the testimony first presented at trial related to one incident and the testimony later presented at trial related to a separate incident. The evidence in this case was not so confusing that the jury was not able to separately consider the evidence relating to the separate incidents. Appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant argues that he did not receive a fair trial because he was "forced" to appear before the jury each day of his trial dressed in prison clothing. He cites to a federal case in which the Third Circuit Court of Appeals held that compelling a defendant to appear before a jury in prison clothing violates a defendant's right to be presumed innocent until proved guilty. Gaito v. Brierley (C.A.3, 1973), 485 F.2d 86.
The state acknowledges that appellant did appear before the jury wearing prison clothing, but says that the record clearly shows that the trial court did not compel appellant to wear prison clothing at his trial. The state cites a portion of the trial transcript where the trial judge raised the issue of appellant's clothing at trial, and asked defense counsel: "Mr. Dempsey is there any clothing available for Artie over there that he can wear tomorrow?" Appellant's trial counsel responded: "We'll figure something out." The state says that since the record shows appellant had ample opportunity to get "street clothing" for trial but chose not to do so, he cannot now complain that the jury saw him at his trial each day wearing prison clothing. Finally, the state says that the jury clearly did not make its decisions based only upon appellant's attire at trial, since they found him not guilty of some of the charges brought against him, so appellant cannot show any prejudice to his case that resulted from his wearing prison clothing at trial.
The Eighth District Court of Appeals considered a similar case and said:
 "We are cognizant of the potential for prejudice when a defendant appears before a jury in jail clothes. `The constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment.' Holbrook v. Flynn (1986), 475 U.S. 560, 567, 89 L.Ed.2d 525, 106 S.Ct. 1340 [citing Estelle v. Williams (1976), 425 U.S. 501, 504-505, 48 L.Ed. 126, 96 S.Ct. 1691].
 "However, in Estelle, the Supreme Court refused to establish an across-the-board rule that a conviction must be overturned, under any circumstances, when the accused wore jail clothing at trial. Instead, the inquiry must focus on whether the accused's appearance before the jury in jail clothes was compelled. Id. at 507. Though a defendant cannot be compelled to appear at trial in identifiable prison clothes, he may choose to do so. State v. Wigley, 1997 Ohio App. LEXIS 387 (February 6, 1997), Cuyahoga App. No. 69920, unreported. Also, there may be other circumstances which indicate a lack of compulsion. * * *" State v. Dorsey (Apr. 23, 1998), Cuyahoga App. No. 72177, unreported.
The State v. Dorsey court then concluded that in that case, the facts showed that the defendant was not compelled to wear prison clothes at trial, and that he did not suffer any prejudice from appearing at trial in prison clothes.
Like the court in State v. Dorsey we conclude that the facts in this case show that appellant was not compelled to wear prison clothes at trial. The trial court itself raised the issue before appellant appeared in front of the jury and encouraged appellant's trial counsel to arrange for other clothing for appellant to wear. In addition, we agree with the state that there is no showing that appellant suffered any prejudice in this case resulting from his attire at trial. The jury did not convict appellant of all the charges filed against him, showing that the jury carefully considered the evidence relating to the charges rather than making a blanket decision that appellant was guilty because he was dressed in jail clothing at trial. Appellant's second assignment of error is not well-taken.
In support of his third assignment of error, appellant argues that he was prejudiced because a juror was permitted to take notes during his trial. He acknowledges that a trial court has discretion to permit jurors to take notes. He stresses, however, that if jurors do take notes, the trial court must give jury instructions to stress that the notes may not be relied upon above the memory of other jurors and that the note taking activities of the jury must not interfere with their full attention to the evidence being presented during trial. He says that the trial court in this case "failed to properly discuss with the jury the pros and cons of note-taking." He argues that one can only speculate what weight the jurors assigned to the notes that were taken. Finally, he says he received ineffective assistance of counsel because his attorney did not ask for a mistrial.
The state responds that because appellant did not object to the note taking or to the lack of a jury instruction on the note taking at trial, the issue was waived and cannot be considered on appeal without a showing of plain error. The state says no plain error occurred here because there is no showing that the jury would not have convicted appellant if it had not taken notes. In the alternative, the state argues that the trial court did not abuse its discretion when it permitted the jury members to take notes.
This court has previously said:
 "A trial court has the discretion to permit jurors to take notes. State v. Wilson (1996), 74 Ohio St.3d 381, 389, 659 N.E.2d 292; State v. Loza (1994), 71 Ohio St.3d 61, 74, 641 N.E.2d 1082. The trial court does not abuse its discretion when it adequately instructs the jury that note taking may be used to assist the jury but should not distract the jurors from the primary duty of hearing the evidence and testimony as it is presented by the witnesses. Wilson, supra. In addition, where no objection is made concerning note taking, a defendant waives all but plain error." State v. Harder (Mar. 29, 1996), Ottawa App. No. OT-95-031, unreported.
The same standards apply to the facts in this case.
The trial transcript in this case shows that the trial judge notified counsel for appellant and for the state that one juror had been observed taking notes with a notepad and pencil. Trial counsel for appellant said: "If the jurors want to take notes, they can do so." The prosecutor also said that he did not object to jurors taking notes. When the trial judge asked if counsel wanted her to say anything about the note taking, counsel told her to make a general statement if she wanted.
The next time the judge gave cautionary instructions to the jury prior to a break, she told them that she noticed some of the jurors were taking notes. She said there was no prohibition in Ohio of jurors taking notes: "As long as you don't get so busy in writing that you forget — you miss something in the testimony." She also cautioned them not to pass their notes around. When she asked trial counsel if there was anything else she needed to address, they both said no. We therefore find that the trial court did give adequate cautionary instructions to the jury regarding taking notes, see State v. Wilson (1996),74 Ohio St.3d 381, 389, and that there was no plain error in this case. Appellant's third assignment of error is not well-taken.
We have previously addressed portions of appellant's fourth assignment of error and found them well-taken. State v. Grissom (Sept. 14, 2000), Erie App. No. E-99-029, unreported. However, following remand, appellant's arguments that "the record is devoid of an adequate explanation as to why Appellant's motion to dismiss was denied * * *" and "Absent specific findings by the trial court such as would excuse the application of the triple- count provision, it can only be concluded a day-for-day calculation should have been utilized * * *" no longer have any merit. The trial court has provided findings of fact and conclusions of law that show that the triple count provisions found in R.C. 2945.71(E) did not apply the entire time before appellant was brought to trial, and that his right to a speedy trial was not violated. Accordingly, the remaining portions of appellant's fourth assignment of error are not well-taken and are denied.
Appellant makes a general assertion in his fifth assignment of error that his convictions are against the manifest weight of the evidence. However, in his argument in support of his fifth assignment of error, appellant argues that his there was not sufficient evidence presented at trial to support two of his convictions for assaulting a police officer and for assaulting a fifteen year old boy.
Appellant begins by arguing that there was no substantial evidence that he assaulted police officer Hamilton of the Sandusky Police Department. He says: "This fact is borne out by the fact that a finding of not guilty was entered by the jury in reference to the assertion that Officer Frost was assaulted as well."
Appellant says the evidence showed that he hid in the top of an abandoned garage/barn and that when the officers arrived he sought only to escape as the result of a drug-induced panic. He says he had no intent to hurt anyone. He says that since the same facts apply to both officers, if he "did not assault Officer Frost, then [he] did not assault Officer Hamilton."
Next, he argues that the evidence is "totally insufficient in reference to the alleged felonious assault of [a fifteen year old boy]." He says the fifteen year old boy admitted at trial that "his only real injury, the cut to his hand, was self-inflicted." He then argues: "If we eliminate the said cut, [the fifteen year old boy] was, as [sic] worst, punched and forced to remove himself from a stationary vehicle. Serious physical harm this is not." He says the trial court should have _suasponte entered an acquittal on these two charges.
The state responds that appellant's conviction for assault of police officer Hamilton was supported by sufficient evidence. The state further states that appellant was not found guilty of felonious assault in relation to the fifteen year old boy. Rather, appellant was convicted of felonious assault regarding an adult male whom he hit the night before he was involved in the incident with the fifteen year old boy, and that conviction is supported by sufficient evidence.
The Supreme Court of Ohio has explained the standard for sufficiency of the evidence as follows:
 "With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387.
Keeping this standard in mind, we have considered the arguments presented relating to this assignment of error and have carefully reviewed the record.
First, we note that the record confirms that appellant was not convicted of felonious assault regarding the fifteen year old boy. Instead, appellant was convicted of robbery in relation to that victim. His arguments that there was no sufficient evidence to support his conviction for assaulting the fifteen year old boy are therefore not well-taken.
Second, we address appellant's argument that there was not sufficient evidence to support his conviction for felonious assault of a police officer. The testimony presented at trial showed that appellant was involved in two separate incidents on August 23, 1998 and August 24, 1998. On August 23, 1998 appellant went to the home of an old school mate during the early hours of the morning. While there, he hit an adult male with his fist, knocking the male to the ground covered with concrete and rendering the male unconscious. When the adult male sought medical treatment at a hospital later that day, he needed twenty- seven or twenty-eight stitches to close the wound on his head caused by his fall to the ground. Appellant's old school mate called the police when the incident happened and made a police report.
The next day, appellant got a ride from a disabled carpenter. The disabled carpenter testified that while appellant was a passenger in his van, appellant signaled a fifteen year old boy over to the van and made arrangements to buy drugs from the youth. According to the disabled carpenter, appellant convinced him to let appellant drive the van so that appellant could get change for a one hundred dollar bill, in a drive-through beverage store where the workers knew appellant, to pay the youth for his drug purchase.
The disabled carpenter testified that instead of driving to the business to get change, appellant punched the boy and told him to get out of the van. The boy did get out of the van and appellant tried to drive away. The van owner threw the van into park and got the keys from the ignition. The boy punched the back window of the van, pushing his fist through the window and cutting his arm. Appellant got out of the van and ran away. The disabled carpenter followed him.
Police officers from the Sandusky Police Department testified that they began receiving radio reports about a youth running down the street with a bleeding arm. They responded to the calls and conducted their own investigation. They quickly located the disabled carpenter, who was standing outside a garage/barn holding a wooden table leg. They took the disabled carpenter into custody and learned that appellant was in the upstairs portion of the garage/barn.
Two officers went into the barn. They verbally called for appellant to surrender himself, but when he did not respond, they cautiously went upstairs. After they reached the second floor, they saw appellant crouching behind what they described as a "pile of junk" including an abandoned mattress, some paint cans and lots of glass. With their guns drawn, they ordered appellant to come out with his hands above his head.
Appellant did come out, but his hands were not above his head. Instead of immediately surrendering to the officers, appellant ran to a small window. He could not get out the window because it was covered with bars, so he turned and ran toward the officers. Both officers testified that appellant charged toward them.
Officer Hamilton testified that appellant knocked him to the ground. He said: "Well, we were on the floor, I was struggling with him. He was flailing his arms, his legs. He hit me several times. I had scratches on my hands, scratches on my arm." He also testified that his watch got broken.
Appellant then got away from Officer Hamilton and ran down the stairs. Appellant fell while going down the stairs. He got up and tried to run away, but did not have very stable footing because the area where he fell was covered with bags full of cans. The two officers tackled appellant, and he continued to struggle. A third officer who stayed outside near the door to the garage sprayed mace and appellant was finally subdued and handcuffed.
Officer Frost testified to virtually the same facts. He testified that appellant charged Officer Hamilton in the upstairs of the garage/barn and knocked Officer Hamilton to the floor. He also testified that he ended up on the floor and that appellant was flailing his arms. He did not say, however, that appellant ever actually hit him. He said that appellant ran down the stairs, falling part-way down, and that they had to tackle appellant. He said a third officer used mace to get appellant under control. He testified that he had some scratches and bruises because of the struggle with appellant.
R.C. 2903.13 provides in pertinent part as follows:
 "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
"* * *
 "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), or (3) of this section, assault is a misdemeanor of the first degree.
"* * *
 "(3) If the victim of the offense is a peace officer, a fire fighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.
"* * *
"(5) As used in this section:
 "(a) "Peace officer" has the same meaning as in section 2935.01 of the Revised Code."
The language of the statute shows that the three essential elements of the crime of assault on a peace officer are: (1) no person shall knowingly; (2) cause or attempt to cause physical harm to another; and (3) the victim of the offense is a peace officer who is performing official duties at the time of the assault.
Knowingly is defined in R.C. 2901.22(B) as follows:
 "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
R.C. 2901.01(A)(3) states that physical harm to persons is: "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Peace officer is defined as:
 "(B) `Peace officer' includes a * * * member of the organized police department of any municipal corporation, * * *, a police officer of a township or joint township police district * * *." R.C. 2935.01(B).
Applying the above statutory definitions, we conclude that the evidence in this case was legally sufficient to support the jury verdict finding appellant guilty of assaulting Officer Hamilton as a matter of law. Officer Hamilton's testimony showed that he is a member of the Sandusky Police Department. His testimony also showed that appellant hit him several times after appellant knocked him to the ground. The jury could therefore reasonably conclude that appellant acted knowingly and that he caused physical harm to Officer Hamilton by punching him. In contrast, the jury could have decided that there was not sufficient evidence to show that appellant knowingly caused or attempted to cause physical harm to Officer Frost. While appellant clearly ran toward both officer when trying to get down the stairs, the testimony of the officers only showed that appellant actually hit or tried to hit one of the officers, Officer Hamilton. Accordingly, appellant's arguments in support of this assignment of error are not persuasive. Appellant's fifth assignment of error is not well-taken and is denied.
In support of his sixth assignment of error, appellant argues that all of the errors he previously raised constituted plain error, and therefore must be remedied on appeal even if they were not preserved by objections from his trial counsel at trial. We have already carefully considered each of the issues raised by appellant in his previous assignments of error, and have concluded that none of the issues rose to the level of plain error. Appellant's sixth assignment of error is therefore not well-taken and is denied.
In support of his seventh assignment of error, appellant argues that he received ineffective assistance of trial counsel. He argues that his trial counsel should have made a motion to sever the counts of his indictment, should not have permitted him to wear prison clothing during his trial, and should have sought a mistrial when it was discovered that a juror was taking notes during trial.
The Supreme Court of Ohio has ruled:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle
[1976], 48 Ohio St.2d 391, 2O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, followed)." State v. Bradley (1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus.
In addition, the Supreme Court of Ohio has made it clear that a presumption exists in Ohio that a licensed attorney is competent. Statev. Jackson (1980), 64 Ohio St.2d 107, 110-111. Applying this standard to this case, we find that even if we assume _arguendo that the representation provided by appellant's counsel fell below an objective standard of reasonable representation, we cannot find that any prejudice arose from his counsel's performance since we have already ruled that none of the issues appellant again raises under this assignment of error were prejudicial error. Appellant's seventh assignment of error is not well-taken and is denied.
After carefully considering the arguments raised and reviewing the record, we find that appellant was not prejudiced or prevented from having a fair trial. The judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _________________________________________ Peter M. Handwork, J., JUDGE
 Melvin L. Resnick, J., James R. Sherck, J., JUDGE, CONCUR.
[1] As we explained in our September 14, 2000 decision, appellant's remaining assignments of error are:
 "1. THE TRIAL COURT ERRED IN FAILING TO AFFORD APPELLANT SEPARATE TRIALS IN REFERENCE TO THE TWO UNRELATED INCIDENTS GIVING RISE TO THE VARIOUS COUNTS IN APPELLANT'S INDICTMENT.
 "2. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY VIRTUE OF THE FACT HE WAS FORCED TO APPEAR EACH DATE BEFORE THE JURY DRESSED IN PRISON GARB.
 "3. THE TRIAL COURT ERRED AND APPELLANT WAY DENIED A FAIR TRIAL AS A RESULT OF NOTE- TAKING ON THE PART OF THE JURY.
 "4. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A DISMISSAL ON SPEEDY TRIAL GROUNDS.
 "5. THE FINDING OF GUILT IN THIS MATTER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. ALL OR A PORTION OF THE COUNTS AGAINST DEFENDANT SHOULD HAVE THEREFORE BEEN DISPOSED OF BY WAY OF A MOTION FOR ACQUITTAL.
 "6. THE SEVERAL ERRORS COMPLAINED OF HEREIN CONSTITUTE PLAIN ERROR AND, FOR THAT REASON, RELIEF IS APPROPRIATE EVEN IF APPELLANT'S COUNSEL FAILED TO OBJECT OF [SIC] OTHERWISE MOVE.
 "7. APPELLANT WAS DENIED A FAIR TRIAL BECAUSE HE WAS FORCED TO PROCEED TO TRIAL WITH INCOMPETENT COUNSEL."